### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

TAVARIS LAMON BODY,           :

     Petitioner,              :

vs.                    : CIVIL ACTION NO. 12-0483-CG-C

UNITED STATES OF AMERICA,    : CRIMINAL ACTION NO. 10-0232-CG

     Respondent.

### REPORT AND RECOMMENDATION

This cause is before the Court on petitioner Tavaris Lamon Body's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 88), the response in opposition filed by the United States (Doc. 92), and petitioner's reply (Doc. 93).[1] This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Body's § 2255 motion be **DENIED**.

### FINDINGS OF FACT

In the instant case, this Court must "untangle" the web woven by side-by-side houses situated on Nellie Street in Mobile, Alabama, 924 Nellie Street and 928 Nellie Street. Because this Court is now in possession of information that the Eleventh Circuit did not possess—namely search warrant information (*see* Doc. 92, Attachment A)—the

---

[1]     On April 22, 2013, Body notified this Court that he was filing a petition for writ of mandamus in the Eleventh Circuit seeking an order compelling this Court to enter its decision in the present case, therein contending that such an order is warranted since he "is currently incarcerated for a crime that he is actually innocent of[.]" (Doc. 96, at 1.)

undersigned will explain how the appellate court mistakenly references 928 Nellie Street in its decision (*see* Doc. 84, at 3) and how such mistaken reference makes no difference.

On October 17, 2010, based on an affidavit provided by Deputy Johnny R. Thornton, Sr., with the Mobile County Sheriff's Office, Mobile County District Judge Michael McMaken issued a search warrant for 928 Nellie Street, a residence believed to be "**occupied by a black male known as TAVARIS BODY.**" (Doc. 92, Attachment A, at 1.)[2]  The search warrant was executed on October 19, 2010[3] and the only items seized were documents and pictures from a Dodge Challenger. (*Id*.)[4] "[T]his was actually the original search warrant we did at 928. . . . On the 26th we did another one at 924 Nellie Street." (Doc. 77, T.T. at 136.)

On October 22, 2010, a criminal complaint was filed in this Court against Body charging him with knowingly and intentionally distributing and possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), from on or about August 30, 2010 through October 19, 2010 (Doc. 1, at 1), and a warrant was issued for his arrest

---

[2]    Thornton's affidavit established probable cause to believe that Body was using 928 Nellie Street to unlawfully possess crack cocaine in violation of § 13A-12-212 of the Code of Alabama. (*See id*.)

[3]    The face of the search warrant reflects that a copy of the warrant was left at the residence, 928 Nellie Street. (*Id*.)

[4]    One of the items found in the car was a MAWSS receipt in the name of Tiffany C. Wrenn (Doc. 92, Attachment A, at 2), Body's girlfriend (*compare* Doc. 88, Declaration of Tavaris Body, at 1 ("Police [] lied about my Uncle saying that I lived at 924 Nellie Street with my girlfriend.") *with* Doc. 93, at 20 ("The Police having struck out with their search at 928 Nellie Street were looking for Body and asked his uncle 'Tommy Body' where he could be found, and Tommy Body told them that he sometimes hung out next door at his girlfriend[']s house. They then searched the car and found the receipt with 'Tiffany Wrens' name on it and a next door address of <u>924</u> Nellie Street. Figuring that Body also stayed at this residence and was likely to be using it as a safe haven or stash house, the Police fabricated Probable Cause to get a search warrant of the residence.")), same reflecting an address of 924 Nellie Street (Doc. 92, Attachment A, at 2).

(Doc. 2). The affidavit offered by Corporal Llewellyn Spencer in support of the criminal

complaint and arrest warrant for Body reads, in relevant part, as follows:

> 4.     I received information from a confidential informant that a black male subject known as TAVARIS LAMON BODY (aka: Tricky B'ham) was selling crack cocaine from 928 Nellie Street, Mobile, Alabama while assigned to MCSENT (Mobile County Street Enforcement Narcotics Team). . . .

> 5.     On August 30th, 2010, I met with a confidential informant in reference to making a controlled buy from TAVARIS LAMON BODY (aka: Tricky B'ham) at 928 Nellie Street, Mobile, Alabama. The confidential informant was given prerecorded money and searched for any illegal contraband, none was found. The confidential informant was followed to 928 Nellie Street, Mobile, Alabama where the confidential informant brokered a deal with the black male known as TAVARIS LAMON BODY (aka: Tricky B'ham) to purchase twelve hundred dollars ($1,200.00) worth of "crack" cocaine. The confidential informant gave TAVARIS LAMON BODY (aka: Tricky B'ham) the pre-recorded money and TAVARIS LAMON BODY (aka: Tricky B'ham) gave the confidential informant twelve (12) quartered "circles" of rock like substance that was consistent with "crack" cocaine. . . .

> 6.     On September 14th, 2010, I met with a confidential informant in reference to making a controlled buy from TAVARIS LAMON BODY (aka: Tricky B'ham) at 928 Nellie Street, Mobile, Alabama. The confidential informant was given prerecorded money and searched for any illegal contraband, none was found. The confidential informant was followed to 928 Nellie Street, Mobile, Alabama where the confidential informant brokered a deal with the black male known as TAVARIS LAMON BODY (aka: Tricky B'ham) to purchase three (3) "circles" of "crack" cocaine for twelve hundred dollars ($1,200.00). The confidential informant gave TAVARIS LAMON BODY (aka: Tricky B'ham) the pre-recorded money and TAVARIS LAMON BODY (aka: Tricky B'ham) gave the confidential informant three (3) "circles" of rock like substance that was consistent with "crack" cocaine. . . . Both of the buys were audio and video recorded.

> 7.     Based upon the aforementioned facts, I have probable cause to believe that TAVARIS LAMON BODY (aka: Tricky B'ham) knowingly distributed and possessed with intent to distribute crack cocaine August 30th, 2010 and September [14], 2010 in violation of Title 21 U.S.C. Section 841(a)(1).

(Doc. 1, Affidavit, at 1-2.)

While Spencer was obtaining a warrant for Body's arrest from this Court based on

the controlled buys he helped set up with the assistance of confidential informant Walter Mosley (*see* Doc. 77, T.T. at 86-95; *compare id. with id.*, T.T. 36-40 & 44-61), Deputy Johnny R. Thornton, Sr., was obtaining that same day, October 22, 2010, a search warrant from Mobile County District Judge George Hardesty for 924 Nellie Street (Doc. 92, Attachment A, at 13 ("**When facing 928 Nellie Street (blue house) the house to be searched sits to the right and is occupied by a black male known as TAVARIS LAMON BODY.** . . . The GROUNDS for search are that said property . . . will be used to commit the offense of: **Unlawful Possession of a Controlled Substance (to-wit: Crack Cocaine) in violation of Alabama State Law code title 13A-12-212.**")).

4.   The **FACTS** establishing probable cause for search are:

I am Deputy Johnny R. Thornton Sr. with the Mobile County Sheriff's Office and I am presently assigned to the Narcotics and Vice Unit.

.     .     .

I have participated in and I am familiar with all aspects of this investigation as described in this affidavit. The statements contained in this affidavit are based upon my observations and statements provided by Deputies from the Mobile County Sheriff's Office and Corporal Llewellyn Spencer with the Saraland Police Department, Saraland, Alabama.

Corporal Llewellyn Spencer received information from a confidential informant that a black male subject known as **TAVARIS LAMON BODY (aka: Tricky B'ham)** was selling crack cocaine between the two (2) residences located at 928 Nellie Street, Mobile, Alabama and 924 Nellie Street, Mobile, Alabama and that while assigned to MCSENT (Mobile County Street Enforcement Narcotics Team), Corporal Llewellyn Spencer conducted two (2) controlled buys in which crack cocaine was purchased from **TAVARIS LAMON BODY (aka: Tricky B'ham)**.

On August 30th, 2010, Corporal Llewellyn Spencer met with a confidential informant in reference to making a controlled buy from **TAVARIS LAMON BODY (aka: Tricky B'ham)** at the address mentioned in section one (1) of this affidavit. The confidential informant was given pre-recorded money and searched for any illegal contraband, none was found. The confidential informant was followed to 928 Nellie Street, Mobile, Alabama where the confidential informant brokered a deal with the black male known as **TAVARIS LAMON BODY (aka: Tricky B'ham)**

4

to purchase twelve hundred dollars ($1,200.00) worth of "crack" cocaine. The confidential informant gave **TAVARIS LAMON BODY (aka: Tricky B'ham)** the pre-recorded money and **TAVARIS LAMON BODY (aka: Tricky B'ham)** gave the confidential informant twelve (12) quartered "circles" of rock like substance that was consistent with "crack" cocaine. . . .

On September 3rd, 2010, Corporal Llewellyn Spencer showed a picture of **TAVARIS LAMON BODY (aka: Tricky B'ham)** to the confidential informant who made the controlled buy from 928 Nellie Street, Mobile, Alabama. The confidential informant recognized the person immediately as **TAVARIS LAMON BODY (aka: Tricky B'ham)**. The confidential informant stated that it was **TAVARIS LAMON BODY (aka: Tricky B'ham)** that (sic) had conducted the transaction of money for "crack" cocaine with him/her.

On September 14th, 2010, Corporal Llewellyn Spencer met with a confidential informant in reference to making a controlled buy from **TAVARIS LAMON BODY (aka: Tricky B'ham)** at 928 Nellie Street, Mobile, Alabama. The confidential informant was given pre-recorded money and searched for any illegal contraband, none was found. The confidential informant was followed to 928 Nellie Street, Mobile, Alabama where the confidential informant brokered a deal with the black male known as TAVARIS LAMON BODY (aka: Tricky B'ham) to purchase three (3) "circles" of "crack" cocaine for twelve hundred dollars ($1,200.00). The confidential informant gave TAVARIS LAMON BODY (aka: Tricky B'ham) the pre-recorded money and TAVARIS LAMON BODY (aka: Tricky B'ham) gave the confidential informant three (3) "circles" of rock like substance that was consistent with "crack" cocaine. . . .

On October 14th, 2010, Corporal Llewellyn Spencer of the Saraland Police Department, Saraland, Alabama provided this investigator, Deputy Johnny R. Thornton Sr. with the Mobile County Sheriff's Office Narcotics Unit with access to the confidential informant in reference to making a third (3rd) controlled buy from **TAVARIS LAMON BODY (aka: Tricky B'ham)** at the 928 Nellie Street address. The confidential informant's person and vehicle were checked for illegal contraband with none being found. The confidential informant was supplied with pre-recorded U.S. currency and followed to the 928 Nellie Street address. Once at the 928 Nellie Street address, a deal was brokered for the exchange of the pre-recorded U.S. currency for "crack" cocaine. The confidential informant received one and [a] half (1½) "circles" from **TAVARIS LAMON BODY (aka: Tricky B'ham)** for eight hundred dollars ($800.00). The approximate weight of the suspected "crack" cocaine was nine (9) grams and Deputy Johnny R. Thornton Sr. performed a field test on the "crack" cocaine and it was positive for the presence of cocaine.

On October 19th, 2010, at approx. 1641 hrs, I, Deputy Johnny R. Thornton Sr. and Corporal Llewellyn Spencer met with the confidential

informant at a prearranged location in reference to making a fourth (4th) controlled buy from **TAVARIS LAMON BODY (aka: Tricky B'ham)** at the 928 Nellie Street address. Once at the prearranged location, I, Deputy Johnny R. Thornton Sr. searched the person and vehicle of the confidential informant for illegal contraband with none being found. The confidential informant was supplied with prerecorded U.S. currency and followed to [the] 928 Nellie Street address. Once at the location, the black male known as **TAVARIS LAMON BODY (aka: Tricky B'ham)** exited the rear door of the house mentioned in section one (1) of this affidavit. The confidential informant then brokered a deal with **TAVARIS LAMON BODY (aka: Tricky B'ham)** to exchange the prerecorded U.S. currency for "crack" cocaine. The confidential informant received a "circle" of "crack" cocaine from **TAVARIS LAMON BODY (aka: Tricky B'ham)** for four hundred dollars ($400.00). **TAVARIS LAMON BODY (aka: Tricky B'ham)** engaged the confidential informant in conversation about additional drugs and then **TAVARIS LAMON BODY (aka: Tricky B'ham)** went back into the location mentioned in section one (1) of this affidavit after completing the deal. The approximate weight of the "crack" cocaine was nine (9) grams and Deputy Johnny R. Thornton Sr. performed a field test on the "crack" cocaine and it was positive for the presence of cocaine.

On October 19th, 2010 at approximately 1738 hours, I, Deputy Johnny R. Thornton Sr. executed a State search warrant at the 928 Nellie Street address. Deputy Johnny R. Thornton Sr. learned that **TAVARIS LAMON BODY (aka: Tricky B'ham)** was living at the residence that was next door to [the] 928 Nellie Street address, and the address is believed to be 924 Nellie Street, with his girlfriend. The information in reference to [] 924 Nellie Street was obtained from **TAVARIS LAMON BODY'S (aka: Tricky B'ham)** uncle, Tommy Body.

.     .     .

Based on the aforementioned facts, I, Deputy Thornton is respectfully requesting that a search warrant be granted for the location mentioned in section one (1) of this affidavit because it is apparent that the black male, "**TAVARIS LAMON BODY**[,]" is using the residence listed in section one (1) of this affidavit as a base of operations for possessing and distributing illegal narcotics. This is based on the information contained within section four (4) of this affidavit.

(Doc. 92, Attachment A, at 15, 16, 17 & 18.)

The search warrant for 924 Nellie Street was executed on October 26, 2010.

(*Compare* Doc. 92, Attachment A, at 6 & 13 *with* Doc. 77, T.T. 136.)[5] When the police entered 924 Nellie Street, Body was found in the left rear bedroom (Doc. 77, T.T. 137) and after securing the remainder of the house—and finding no one else home—the police began their search in earnest (*id.* at 137-138). Recovered from Body's person were a set of keys, $441.00 in cash in his left front pants pocket, and a wallet containing additional currency.[6] (*Id.* at 138.)[7] In the set of keys taken off Body's person was a key to 924 Nellie Street; Deputy Thornton actually removed the key from the set and placed it in the door to the house to confirm that it worked to unlock the door. (*Id.* at 138-139.)[8] Also recovered from 924 Nellie Street was a weapon (*id.* at 144); Deputy Andrew O'Shea discovered a Kel-Tec 223[9] in a suitcase located in a room situated between the living room and kitchen (*id.* at 164; *see also id.* at 169 ("[The suitcase] was unzipped. I just picked the lid up and saw the weapon.")).[10] Deputy Preston Jones spoke to Body after

---

[5]     The confidential informant, Walter Mosley, was utilized to insure that Body was actually inside 924 Nellie Street when officers conducted their search. (Doc. 77, T.T. 134-135.) Deputy Thornton specifically testified that the information law enforcement received (from Mosley) established that the two buys Thornton supervised occurred at 924 Nellie Street. (*Id.* at 135.)

[6]     A total of $1,821.00 in cash was recovered from Body, including four one hundred dollar ($100) bills embossed with serial numbers matching those bills utilized in the controlled buy on October 19, 2010. (*Id.* at 140-141.)

[7]     Thornton read Body his *Miranda* rights and placed him in the living room area while the police conducted their search. (*Id.* at 138 & 181.)

[8]     A picture was also taken of the key inside the lock. (*Id.* at 139.)

[9]     ATF Agent Steve Thompson testified that the Kel-Tec, serial number P5Y67, was manufactured in Cocoa, Florida. (*Id.* at 187-188.) Thompson did not perform any tests or analysis to determine whether Body ever touched the weapon. (*Id.* at 189; *see also id.* (the agent's testimony that he has rarely been successful in lifting fingerprints off firearms).)

[10]     The suitcase contained men's clothes; the bag contained no name tags or other identifying information. (*Id.* at 168-169.) Deputy O'Shea could not identify whose suitcase it was or when it was brought into the house. (*Id.* at 169-170.)

completion of the search[11] and asked him why he had the gun in the house, prompting the following response from petitioner: "'If a nigga tries to kick my door in or steal my rims, rims or some other shit like that, I'm going to kill his ass and leave him on the back porch.'" (*Id.* at 183) Deputy Jones then commented to Body that the gun charge was going to carry five years[12] whereupon Body responded that he'd "take a gun charge any day over a dope charge." (*Id.* at 184 (footnote added); *compare id. with* Doc. 92, Attachment A, at 19 ("As we both sat in the dining room of the residence, I spoke with Body concerning a gun found in the residence. I asked Body why he had the gun in the house. Body said 'If a nigga comes to try to kick my door in to steal my rims or some

---

[11]    During the search, Deputy Jones found in a closet a dry cleaning receipt with Body's name on it (*see id.* at 175), a receipt which Jim Byrd's cross-examination of Deputy Thornton clearly establishes reflected an address of 928 Nellie Street (*id.* at 153).

> Q    Who has the power bill at 924 Nellie Street?
>
> A    It comes back to a female, and I don't recall her name right offhand.
>
> Q    Did you conduct any surveillance of 924 Nellie Street to see who all stayed there?
>
> A    No, sir.
>
> Q    Did you conduct any surveillance of 928 Nellie Street to see who all stayed there?
>
> A    No, sir.

(*Id.*)

[12]    *See* 18 U.S.C. § 924(c)(1)(A)(i) ("Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence of drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years[.]").

other shit, I'm gonna kill his ass and leave his ass on the back porch'. I then told [B]ody you are looking at five years Fed time on a gun charge. Body then said 'I will take a gun case any day over a dope case'.").)  In addition to the foregoing, officers conducting the search also found a copy of the search warrant executed on 928 Nellie Street on the kitchen table (Doc. 92, Attachment A, at 10), as well as rock-like residue on the inside of the microwave that field-tested positive for the presence of cocaine (*compare id.* at 8 *with* Doc. 77, T.T. 160).

Body made his initial appearance in this Court on October 26, 2010; Latisha Colvin from the Federal Public Defender's Office was appointed to represent petitioner. (*See* Docs. 5-6.)[13] Colvin was allowed to withdraw the following day—October 27, 2010— and Daniel L. McCleave was appointed to represent Body. (*See* Docs. 8-10.) That same day, October 27, 2010, Body was indicted on four counts of knowingly and intentionally distributing and possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (Doc. 12, at 1-3.)[14] Less than a week later, on November 2, 2010, an order of detention was entered (Doc. 15) and the government notified the defendant that since he had been previously convicted of a felony drug offense he was "subject to the penalty provision in Title 21, United States Code, Section

---

[13]     An order of temporary detention was entered on October 26, 2010. (Doc. 7.)

[14]     Interestingly, a sealed pretrial services report dated October 27, 2010, reflects Body's reported address as being 924 Nellie Street: "The defendant reported that he has resided at the above residence [924 Nellie Street], that is owned by a family member, with his adult aged brother, and two adult aged cousins, for approximately five to six months. Prior to this, he stated that he resided at 928 Nellie Street in Mobile since 2007. He advised that he resided in Birmingham from birth until he moved to Mobile in 2002. The defendant reported that he intended to move to Birmingham with his child's mother, Tiffany Wrenn, the day of his arrest." (Doc. 18, at 1.)

851 and the second and subsequent penalties contained in Sections 841(b)(1)(A), (B) and (C) as charged in the above captioned indictment." (Doc. 16.)

Body was arraigned on all charges on November 3, 2010 (Docket Sheet); trial was set for the January, 2011 trial term, all pretrial motions were ordered to be filed by November 18, 2010,[15] and the pretrial conference was set for December 6, 2010. (Doc. 17.) There were no pretrial motions filed prior to the November 18, 2010 deadline. (*See* Docket Sheet.)

On November 19, 2010, one day after all pretrial motions were due, John L. White, Esquire, filed his notice of appearance as retained counsel of record for Body (*see* Doc. 19) and, on November 22, 2010, Daniel L. McCleave, Esquire, was allowed to withdraw (*compare* Doc. 20 *with* Doc. 21). During the November 22, 2010 Probation Office Conference, which was attended by Mr. White and Body, petitioner was informed that Counts 1 and 2 of the indictment carried a statutory mandatory minimum penalty of five (5) years custody, and possibly higher "if enhanced[.]" (Doc. 22, at 1 & 7.)[16] Indeed, some

---

[15]      The Order on Arraignment entered on November 4, 2010, reads, in relevant part, as follows: "All pretrial motions under Fed.R.Crim.P. 12(b) . . . must be filed not later than **November 18, 2010**. No motion filed after this date will be considered unless filed with leave of Court." (Doc. 17, at 2.) Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, in turn, provides that a motion to suppress evidence must be raised before trial. Fed.R.Crim.P. 12(b)(3)(C).

[16]      This issue was discussed at some length by the Court and attorneys in relation to the verdict form that the jury should consider. (Doc. 77, at 194-200.)

THE COURT:  We need to put weights on it, I guess, for some of the counts.

MS. VANN:   You do. . . . The first two have the minimum mandatory.

.      .      .

MS. VANN:   It's raised . . . to 28 grams for the minimum mandatory of five years.

(Continued)

ten days later on December 3, 2010, the government filed a notice of enhancement

information, same reading, in relevant part, as follows:

> COMES NOW the United States of America . . . and, pursuant to 21 U.S.C. § 851(a), files this information setting forth facts concerning previous conviction of the defendant, **TAVARIS LAMON BODY**, for a felony drug offense, which exposes the defendant to increased punishment if convicted of Counts One, Two, Three or Four of the Indictment.
>
> On or about February 18, 2004, the defendant was convicted of Possession of Cocaine, in the Circuit Court for the State, Mobile County, Alabama, [] No. CC-03-2700.
>
> Should the defendant be convicted of Counts One, Two, Three or Four of the Indictment in this case, the defendant would face an enhanced sentence of 10 years custody up to life, a $4,000,000 fine and 8 years of supervised release.

(Doc. 23, at 1.) In addition, during the probation office conference the only "guideline"

numbers discussed were those set forth on page seven of the probation office conference

report, based upon a total offense level of 28 (Doc. 22, at 7), derived by adding the level

generated by the four drug counts (26) to the 2 level "bump" generated by the gun count

(*see id.* at 2). The various guidelines "numbers" generated upon consideration of

acceptance of responsibility (or not) were the following: (1) 70 to 87 months (28-3=25); (2)

78 to 97 months (28-2=26); and (3) 97 to 121 months (28-0=28). (*Id.* at 7.)

Defense counsel did not appear for the pretrial conference before Judge Sonja

---

THE COURT: So it would be more than 28 grams or less than 28 grams is basically all we need to find. . . . For those two.

MS. VANN:   Yes, ma'am.

THE COURT: And they don't need to find a weight for . . . the other two.

MS. VANN:   Because there's no minimum mandatory attached to them.

(*Id.* at 194 & 195.)

Bivins on December 6, 2010 and, therefore, was ordered to appear the following day and show cause for his failure to attend on December 6, 2010. (Doc. 24.) White appeared on December 7, 2010, and a pretrial conference order was entered setting the matter for jury selection on January 3, 2011 and trial during the January 2011 term. (*See* Docs. 25-26.) Some two weeks later, on December 21, 2010—approximately two weeks prior to jury selection on January 3, 2011—James M. Byrd, Esquire, filed his notice of appearance as retained counsel of record for Body. (Doc. 27; *compare id. with* Doc. 26.)

Notice of intent to introduce Rule 404(b) evidence was filed by the United States on January 4, 2011. (Doc. 31 ("[T]he United States may seek to introduce, pursuant to Fed.R.Evid. 404(b), the following prior convictions: Possession of Cocaine, Circuit Court of Mobile County, Alabama, Case Number CC 03-2700; and Discharging Gun in Occupied Car, Circuit Court of Mobile County, Alabama, Case Number CC 06-248.").)

Body elected to exercise his constitutional right to trial by jury, U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed[.]"), and this case was tried to a jury on January 18-19, 2011 (*see* Doc. 77 , at 1). In addition to the information already supplied regarding the search warrants issued by the Mobile County District Court for 924 Nellie Street and 928 Nellie Street, the undersigned need highlight other aspects of the trial of this cause. First, at 9:01 a.m. on January 18, 2011, the following occurred:

> THE COURT:        Anything we need to discuss before we start?
>
> MR. BYRD:   Yes. A little bit. I have been accused three times out there, maybe four times out there, this morning by my client of working for the government.
>
> THE COURT:        Well, he's been through a number of lawyers. I'll say that.

12

MR. BYRD:   Yes, he has. The last meeting I had with him, he gave me his handwritten notes about his 2255 for ineffective assistance of counsel he was drafting up and filing against his lawyers. I didn't think I was included in that group of lawyers, as of the last conversation, but apparently I am now today because I'm working for the government, according to him.

I have done nothing to find a defense for him. I've done nothing to fight this, *I've done nothing to contest the search warrants which were issued on affidavits. And on their face they are – you know, they are good and, as I understand, in good faith even if I had some issue with them. But he doesn't understand any of that, and so I'm working for the government now, according to him.*

THE COURT:       I don't think he's ever going to be satisfied with any lawyer that he's got.

MR. BYRD:   No.

THE COURT:       *If he hasn't asked the Court to relieve you of your duty, you're going to be just right along doing the best you can under the circumstances.*

MR. BYRD:   I've let him know that I've looked at all the DVDs and I've listened to all the recordings and we've gone over all the phone records and toll records and I'm trying to figure out why he wants to go to trial.

THE COURT:       Yeah. Well, he just doesn't like what he's facing apparently.

(Doc. 77, T.T. 2-3 (emphasis supplied).) In addition, prior to trial the Assistant U.S. Attorney indicated that she intended to introduce Body's prior felony drug conviction for possession of cocaine both as "a predicate felony for felon in possession and as 404(b) evidence." (*Id*. at 4.) Byrd indicated that he understood the government's desire to introduce the prior felony drug conviction as a predicate felony conviction for Count 5 but objected to it being used as Rule 404(b) evidence. (*Id*. at 4-7.) Byrd's 404(b) objection was overruled prior to trial (*see id*. at 7 ("THE COURT:  I still think it's similar enough that it's relevant as 404(b) evidence. So I'm going to allow that and give a

limiting instruction on it.")) and, again, during the course of the trial when the government offered the prior felony conviction of Body for possession of cocaine (*id*. at 114-115 ("MR. BYRD: I would renew and maintain my objections to the 404(b). . . .[T]hey haven't showed us what purpose under 404(b) they think it supports or it's admissible under. . . . THE COURT: I overrule the objection.")).[17]

During the trial, Walter Mosley, testified that he bought crack cocaine[18] from Body (on Nellie Street in Mobile, Alabama) on four occasions from August 30, 2010 through October 19, 2010. (*See id*. at 36-40 & 44-72.) Byrd cross-examined Mosley at some length, calling into question the confidential informant's veracity. (*See id*. at 72-78.) Corporal Llewellyn Spencer testified for the government and, following his general testimony about using Mosley on two occasions to make controlled drug buys from Body on Nellie Street and the toll records in existence with respect to all four drug buys (*id*. at 86-100), he began to testify about the execution of two different search warrants on Nellie Street, one on October 19, 2010 and the other on October 26, 2010 (*see id*. at 101-111). During the course of Spencer's testimony that the October 19, 2010 search warrant was executed on 924 Nellie Street, while the October 26, 2010 search warrant was executed on 928 Nellie Street (*see id*.), Byrd objected to the search and requested

---

[17]     Byrd's objection within the context of the entire discussion makes clear that he did not object to introduction of the prior felony drug conviction as a predicate conviction for the gun charge. (*See id*. at 113-114; *compare id. with id*. at 4 ("I understand the predicate for [] count five of the indictment.").) Indeed, as part of the predicate conviction evidence, Adam T. Robertson, a probation and paroles officer with the Alabama Board of Pardons and Paroles, testified—without objection—that Body was convicted in the Circuit Court of Mobile County, Alabama of felony possession of cocaine on February 12, 2004. (*Id*. at 118.)

[18]     The substances Mosley purchased from Body were analyzed by Heather Morgan, a drug chemist with the Alabama Department of Forensic Sciences, and revealed the presence of cocaine base. (*See* Doc. 77, T.T. 119-125.)

suppression of the evidence seized on the basis that the officers did not have legal permission to conduct the search (*see id*. at 109). At a sidebar, outside the presence of the jury, the following occurred:

> MR. BYRD:   Your Honor, this isn't the officer who did the affidavit or led the search of anything. But from what he's testified, I don't believe they had any authority to [s]earch 928 Nellie Street on October 26th, from what he said.
>
> THE COURT:        Well, you haven't filed a motion to suppress.
>
> MR. BYRD: I know. But this is from his testimony here this morning. It contradicts the discovery and information I've got.
>
> THE COURT:        He said he was asked to assist with a search warrant. So I overrule the objection.

(*Id*. at 109.) The reason, of course, that Spencer's testimony contradicted the discovery and information that Byrd had received was because the information Byrd had indicated that 928 Nellie Street was searched on October 19, 2010 and only 924 Nellie Street was searched on October 26, 2010. (*Compare id. with* Doc. 92, Attachment A, at 6-19.) And, of course, only 924 Nellie Street was searched on October 26, 2010, as made clear by Deputy Johnnie Thornton[19] in his testimony. (Doc. 77, T.T. 136.) Thornton's testimony not only prompted another motion from Mr. Byrd regarding the search (*see id*. ("MR. BYRD:       Excuse me, Your Honor. But I renew my objection to the search based upon the testimony of Officer Spencer. . . . I don't believe[] it's a constitutional search anymore. They have undercut their own basis of probable cause. THE COURT: I deny your motion.")[20]) but, as well, clearly threw the Assistant United States Attorney

---

[19]       Thornton testified that Mosley made two controlled buys of crack cocaine for him from Body. (*See id*. at 129-134.) The deputy testified that the information the police had indicated that the two buys Mosley made for him occurred at 924 Nellie Street. (*Id*. at 135.)

for a loop given the earlier testimony of Spencer (*see id.*).

> Q    And when you arrived at the location [on October 26, 2010, at 11:00 a.m.] – and it was, again, where was the house to be searched?
>
> A    924 Nellie Street.
>
> Q    And did you prepare a report when you did the search?
>
> A    Yes, ma'am, I did.
>
> Q    I'm going to show you a report ***hopefully that will refresh your recollection as to what the address was on the day of the search***. Okay? Would you look at it for a minute? Does that help refresh your recollection?
>
> A    Yes, ma'am. ***But this was actually the original search warrant we did at 928.***
>
> Q    Yes.
>
> A    ***On the 26th we did another one at 924 Nellie Street.***
>
> Q    Okay.
>
> A    ***He had two separate houses, two separate locations. And that was the report from the first search warrant and the first buy.***

(*Id.* at 135-136.) The Assistant United States Attorney quickly recovered (*see id.* at 136-

147), as did petitioner's attorney based on the following exchange with Thornton:

> Q    And the . . . warrant you executed on the 26th of October was at 924 Nellie Street?
>
> A    That's correct.
>
> Q    Who has the power bill at 924 Nellie Street?
>
> A    It comes back to a female, and I don't recall her name right offhand.
>
> Q    Did you conduct any surveillance of 924 Nellie Street to see who

---

[20]    "During the government's presentation, the defendant's oral motion to suppress search as unconstitutional [] was **DENIED**." (Doc. 42, at 2.)

16

stayed there?

A      No, sir.

Q      Did you conduct any surveillance of 928 Nellie Street to see who stayed there?

A      No, sir.

(*Id.* at 153.)[21]

As for the gun found in a suitcase in a room of the house in which Body was arrested, defense counsel clearly intimated to the jury that the gun was someone else's gun:

Q      . . . Do you have a list of what all was in that suitcase?

A      I just saw clothing inside of the suitcase.

Q      Men's or women's clothing?

A      Men's.

Q      Do you know whose clothing they were?

A      No, sir, I do not.

Q      And this was in a suitcase in that room that's in . . . a house where Tavaris Body was found in the back bedroom?

A      Yes.

                    .       .       .

Q      Any receipts, any identification, anything like that, any tags on the bag of where it had been or whose name or anything?

A      No, sir. It was just clothes stuffed down in the suitcase. They

---

[21]      Byrd also established through cross-examination of Deputy Thornton, as he did with Corporal Spencer (*see id.* at 112-113), that Mosley was not in either officer's line-of-sight when he went down Nellie Street to purchase drugs, that neither officer monitored the calls to and/or from Mosley setting up the drug deals, and that neither officer knew where Mosley went (or did not go) immediately preceding each drug buy (*see id.* at 149-151).

weren't folded like a trip. It was just clothes stuffed all around the weapon.

.    .    .

Q     And you don't know whose suitcase it was?

A     No, sir.

Q     Do you know when it was brought into the house?

A     No, sir.

Q     You don't know when it was brought into the house?

A     No, sir.

(*Id.* at 168, 169 & 169-170; *compare id. with id.* at 189 (ATF Agent Steve Thompson admitted on cross-examination that he did no analysis on the gun to determine whether Body ever touched the gun) and *id.* at 193-194 ("THE COURT:  Well, my thought on that [--joint possession and aiding and abetting--] was that I'm not sure it applies so much to the drug counts, but on the gun count there is *some intimation through your questioning that maybe it wasn't his gun*. MR. BYRD: Right. THE COURT: But the statement, you know, if they believe the statement and believe that it could have been somebody else's gun, then that might be appropriate. MR. BYRD:  All right. Then I see your reasoning. And thank you. I just didn't understand how you come to that. But I do now. Thank you.").)[22]

Following the close of the government's case, Body's attorney made a motion for directed judgment of acquittal as to each count of the five-count indictment on the stated bases that the government had failed "to prove a prima facie case and the

---

[22]     Deputy Preston Jones denied that Body told him that "if the gun was his," he would tell the officer it was his. (*Id*. at 184.)

insufficiency of the evidence." (*Id*. at 189-190.) The defendant's motion was denied. (*Id*. at 190 ("I think there is enough evidence to go to the jury on all counts.").) Immediately thereafter, the defense rested; Body expressly informed the Court that he did not want to testify. (*Id*.)

The jury began their deliberations on January 19, 2011, at approximately 10:00 a.m. (*id*. at 203 & 208), and announced at 11:27 a.m. that they had reached a reached a unanimous verdict (*id*. at 214). "'We, the jury, find the defendant, Tavaris Lamon Body, not guilty as charged in count one of the indictment, not guilty as charged in count two of the indictment, not guilty as charged in count three of the indictment, not guilty as charged in count four of the indictment, guilty as charged in count five of the indictment. Melody Duncan, foreperson.'" (*Id*. at 215; *see also id*. at 215-216 ("The jury having returned verdicts of not guilty on counts one through four, those counts are hereby dismissed and you are discharged from those four charges. We will set a sentencing date as to count five."); *see* Doc. 41 (verdicts); Doc. 42 (January 19, 2011 order of Judge Granade which specifically dismisses with prejudice Counts 1-4 of the Indictment).)

The March 16, 2011 Presentence Investigation Report notified counsel that "a violation of 18 U.S.C. § 922(g)(1) . . . establishes a base offense level of 20,"[23] but because Body possessed the firearm "in connection with another felony offense (possession of cocaine)," his base offense level was increased by four levels to a 24. (Doc. 51, at 9-10.) The report also recognized the statutory maximum term of imprisonment for this

---

[23]    For an individual, like Body, with a criminal history category of III (Doc. 51, at ¶ 42), a base level offense of 20, without any adjustments, would carry a sentencing range of 41 to 51 months. *See* Sentencing Table.

offense of 10 years and that the "guideline range of imprisonment is 63 to 78 months[]" based upon "a total offense level of 24 and a criminal history category of III[.]" (*Id.* at 19.)

Defense counsel, Jim Byrd, filed the defendant's position regarding the Presentence Investigation Report on March 30, 2011 and therein objected to the four-level increase to the base level of 20. (Doc. 54.) "Tavaris L. Body was found not guilty off all 4 distribution charges. A search warrant was executed and Tavaris L. Body was found to be in possession of a firearm. Tavaris L. Body did not use or possess the firearm in connection with another felony offense. Therefore, the §2k1.1(b) [], U.S.S.G., 4 level increase to the base offense level of 20 does not apply. **WHEREFORE**, there being no credible evidence Tavaris L. Body did use or possess a firearm in connection with another felony, Tavaris L. Body prays this Honorable Court find the base offense level of 20 in this cause." (*Id.*) The probation officer replied to Body's objection in the following manner on April 14, 2011: "[T]he level of proof to convict **Body** of a crime must be 'beyond a reasonable doubt,' while the level of proof to apply the enhancement to the base offense level is a 'preponderance of evidence.' For this reason, the report remains unchanged and the objection is preserved for the sentencing hearing." (Doc. 57, at 1 (emphasis in original).)

On April 20, 2011, Body was sentenced to a 78-month term of imprisonment as to Count 5 of the Indictment. (Doc. 78, at 7; *see also id.* ("I was, frankly, surprised at the acquittal on those [drug] counts[.]").)[24] The Court advised Body of his right to appeal his

---

[24]     The Court overruled Body's objection to the four-point enhancement. (*Id.* at 5.)

(Continued)

conviction and sentence, whereupon defense counsel reminded the Court that Body had

earlier filed a written notice of appeal which was deemed to be premature (*compare* id. at

---

MR. BYRD:    The first issue or argument is that Mr. Body was found not guilty of the other felony offense[s], that being the distribution of cocaine, and so therefore this is punishing Mr. Body for something that he was found not guilty of by a jury. So I believe that's a violation of the Sixth Amendment . . . of the United States Constitution in that he's being punished for something for which a jury did not find him guilty. And I know the case law that is going to be cited, but I have that argument. . . . And the second part of the argument is that this subsection or section of the United States Sentencing Guidelines is for an incident or an event where the defendant is found guilty of a felony and then in connection with that felony he possessed a gun so that they add four levels. It's not for an incident where he had a gun and he's convicted of the gun and then there's another charge in relation to that. That's backwards to what the guidelines was trying to do.

It says if he possessed or used a gun in relation to another felony, it's the possession of the gun with that felony that's the added four points to that felony. It's not added four points for possession of the gun conviction.

.      .      .

THE COURT:  I've never heard of that interpretation and I think there's multiple case law that is in support of the fact that this enhancement is for the possession of the gun charge. But that's a good argument. . . . Does the government have a position on his objections?

MS. VANN:   We do, Your Honor. I had a brief conversation with defense counsel prior to the hearing and I shared with him the precedent of the Eleventh Circuit. And it is well settled in this district that relevant conduct from a defendant who has been acquitted may be taken in account in sentencing the defendant for an offense of conviction as long as the government proved the conduct relied on by a preponderance of the evidence; in addition to the fact that whatever sentence he receives is not going to go beyond what the count of conviction is. And the case in point is exactly on point, United States versus Duncan, which is cited at 400 Fed.3d 1297 from this circuit in 2005. So it is our position that the calculation is correct based on . . . that case law.

THE COURT: . . . Well, I'm familiar with the case law that the prosecutor has cited and I find that it does apply in this case. I also find that the evidence supports at least . . . by a preponderance of the evidence that cocaine possession charges were sustainable and I do find that the possession of this firearm was in connection with the possession of cocaine. So I do find that the enhancement applies, the four-point enhancement.

(*Id*. at 3, 4 & 4-5.)

21

9 *with* Docs. 43 & 45) and, as well, requested leave to withdraw based upon Body's stated dissatisfaction with Byrd's representation (Doc. 78, at 9).[25] On the record, the Court specifically stated that Body's earlier-filed notice of appeal would "be taken as his notice of appeal from this conviction and sentencing[]" (*id.*) and further advised the defendant that he would "either need to retain counsel [for appeal] or provide the Court with an affidavit showing that you need appointed counsel and can't afford to obtain counsel." (Id. at 10.)

Although Body had been informed that he need not file another written notice of appeal (Doc. 78, at 9), he nonetheless filed another written notice of appeal on April 22, 2011 (Doc. 64), the same date that final judgment was entered in his case (Doc. 62). By unpublished *per curiam* opinion entered on January 5, 2012, the Eleventh Circuit Court of Appeals affirmed Body's conviction and sentence. (Doc. 84.)

> Tavaris Lamon Body was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Body appeals his conviction and asks that we vacate it for three reasons. First, he contends that the search of his home, which uncovered the firearm, violated the Fourth Amendment. Second, he argues that the district court should have held an evidentiary hearing under *Franks v. Delaware*, 483 U.S. 154 (1978). And last, he argues that there was not sufficient evidence to support his conviction.

---

[25]     Indeed, Byrd filed in open Court a written motion to withdraw. (*See* Doc. 59.)

1.     Tavaris Body has not paid the trial retainer fee in full;

2.     Tavaris Body has stated he is dissatisfied with counsel's performance;

3.     Tavaris Body has mis-stated facts concerning retainment of counsel;

4.     On January 27, 2011, Tavaris Body informed counsel his services were no longer needed.

(*Id.*) Byrd's motion was granted by endorsement on April 21, 2011, and Robert Ratliff was appointed as counsel on appeal. (Doc. 61; *see also* Doc. 67 (April 29, 2011 letter from the Eleventh Circuit Court of Appeals advising Ratliff of his appointment to represent Body on appeal).)

At the outset, we note that Body has waived his first two arguments, and thus, we will not address them. Body neither filed a motion to suppress nor requested a *Franks* hearing in the district court. Federal Rule of Criminal Procedure 12(b)(3)(C) requires that a motion to suppress be filed before trial. And the failure to file such a motion before trial waives any objection unless the defendant can demonstrate good cause for his failure to do so. Fed.R.Crim.P. 12(e); *see also United States v. Ford,* 34 F.3d 992, 994 n.2 (11th Cir. 1994). Because Body has not demonstrated good cause for his failure to file a motion to suppress before trial, he has waived that argument and we will not address it. We have also applied Rule 12(e) to foreclose review of late-filed *Franks* motions. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990). Here, Body never requested a *Franks* hearing, and thus he has also waived that claim.

We not turn to Body's remaining argument. We review a district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence *de novo. United States v. Friske,* 640 F.3d 1288, 1290 (11th Cir. 2011). But we consider the evidence in the light most favorable to the government and we will not overturn a conviction if any reasonable construction of the evidence supports the jury's verdict. *Id.* at 1291.

To obtain a conviction under 18 U.S.C. § 922(g) the government must prove that the defendant (1) had a felony conviction and (2) knowingly possessed a firearm that (3) was in or affected interstate commerce. *United States v. Funches,* 135 F.3d 1405, 1406-07 (11th Cir. 1998). Body does not contest that he had a felony conviction or that the firearm found in his house had been in or affected interstate commerce, but rather only the possession element. Possession can either be actual or constructive. To show constructive possession, the government must establish that the defendant "exercised ownership, dominion, or control over the firearm." *United States v. Gunn,* [369 F.3d] 1229, 1234 (11th Cir. 2004).

At trial, police officers testified that they found Body and a gun at 928 Nellie Street.[26] They also testified that they found a key to 928 Nellie

---

[26]     As this Court's previous discussion exemplifies, Body and the gun were found at 924 Nellie Street, not 928 Nellie Street. Corporal Spencer's mistaken identification of 928 Nellie Street as the address that was searched on October 26, 2010 is what caused Body's attorney to twice—once during Spencer's testimony and, again, during Thornton's testimony—seek to suppress fruits of the search given the search warrant "discovery" he was supplied with establishing that 924 Nellie Street was searched on that date. Once Deputy Thornton testified and got everyone "straight"—even the Assistant United States Attorney—on which house (924 Nellie Street) was searched on October 26, 2010, and in which Body and the gun were found, the case was submitted to the jury on such evidence.

23

Street on Body,[27] as well as a Western Union money order and an auto-repair work order in Body's name that both listed 928 Nellie Street as his address.[28] Finally, after Body had been read his *Miranda* rights, an officer asked him why he had the gun. The officer testified that Body responded that he had the gun for protection. We conclude that this evidence is sufficient to support the jury's finding that Body exercised "dominion or control" over the firearm and thus there was sufficient evidence to support his conviction. *Cf. United States v. Clay*, 355 F.3d 1281, 1284 (11th Cir. 2004) (allowing constructive possession in drug cases to be showed by establish[ing] "ownership or dominion and control . . . over the premises on which the drugs are concealed").

(*Id*. at 1-4 (footnotes added).)[29]

Body filed his motion to vacate, pursuant to 28 U.S.C. § 2255, on July 25, 2012. (Doc. 88, Memorandum, at 44 (date placed in the prison mailing system).) In a consummate reflection of the adage that no good deed goes unpunished,[30] Body raises in his motion to vacate the following seven claims of alleged ineffective assistance of counsel: (1) his trial attorney (Byrd) was constitutionally ineffective in failing to conduct an adequate pretrial investigation[31] and in failing to call an exculpatory witness;[32] (2) his

---

[27]     In fact, Thornton testified that the key found on Body's person was a key to 924 Nellie Street. (Doc. 77, T.T. 138-139)

[28]     These two "documents," as well as other documents seized from the search of 924 Nellie Street, did indeed reflect Body's name and the address 928 Nellie Street. (*See* Doc. 77, T.T. 144-147)

[29]     That opinion issued as mandate on February 27, 2012 (Doc. 85, at 2) and the Supreme Court of the United States denied Body's petition for writ of certiorari on May 14, 2012 (Doc. 87, at 2).

[30]     The "good deed," of course, was Byrd's admirable ability to convince the jury to discredit the confidential informant's testimony and acquit Body of all four drug counts set forth in the Indictment.

[31]     Petitioner's additional insertion of the allegation that counsel failed to conduct an adequate presentence investigation in this regard simply makes no logical sense in light of the fact that the focus of his argument is on counsel's failure to track down the witness and present him at trial in rebuttal of the government's evidence. (*See* Doc. 88, Attached Memorandum, at 4-7.) This Court has no obligation to address conclusory allegations not developed and factually (Continued)

24

trial attorney (Byrd) was constitutionally ineffective in failing to file any written pretrial

motions, including a motion to suppress and a motion to exclude 404(b) evidence; (3)

counsel retained previous to Byrd (that is, John L. White) was constitutionally ineffective

in "failing to convey a favorable plea offer which was taken off the table because counsel

[White] failed to show up for a pretrial hearing[;]" (4) trial counsel (Byrd) was

constitutionally ineffective in failing to withdraw and/or in failing to ask the Court to

make a determination on whether a conflict of interest was present "when a potential

---

supported by petitioner. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)
("Conclusory allegations of ineffective assistance are insufficient.").

[32]     Body attached to his § 2255 petition the declaration of his putative exculpatory
witness, Marquis D. Bell, same reading, in relevant part, as follows:

> 1).     I am from Birmingham[,] Alabama, but during the time in
> question (October 26, 2010) I was staying with friends in Mobile[,] Alabama.

> 2).     As such, I had a suitcase with all of my clothes in it as well as my
> personal protection firearm (KEL-TEC MODEL PLR-16, 5.56 caliber Pistol),
> which I legally purchased and have a receipt for.

> 3).     This suitcase containing my clothing and my firearm was at 924
> Nellie Street when it was searched by the Police and the firearm was seized.

> 4).     ***This was not Mr. Body's residence, he is a friend of mine and I
> know that he was living at 928 [N]ellie Street***. In addition, I never told Mr. Body
> that I had a firearm with me or that it was in my [s]uitcase.

> 5).     After Mr. Body was arrested for possessing this firearm along
> with some drug offenses I contacted him and told him that I would come in and
> testify that the gun was mine and that he had no knowledge that it was in my
> suitcase.

> 6).     He told me that he had told his Attorney, and that he should be
> contacting me soon. But I never heard anything from the lawyer. I even went to
> Court on the day of trial ready to testify but I was never called. I found out later
> that Mr. Body's Attorney did not call me because he believed that he would win
> the Firearm case without my testimony.

(Doc. 88, Declaration of Marquis D. Bell (emphasis supplied).)

one came to his attention[;]" (5) trial counsel (Byrd) was constitutionally ineffective for

failing to oppose the government's failure to correct perjured testimony during trial; (6)

sentencing counsel (Byrd) was constitutionally ineffective in failing to oppose the four-

level enhancement "on the basis that there was insufficient evidence to support it where

there was absolutely no evidence that the petitioner ever possessed a firearm in

proximity to drugs[;]" and (7) appellate counsel (Robert Ratliff) was constitutionally

ineffective in failing to raise meritorious claims on appeal "that likely would have

succeeded." (Doc. 88, Attached Memorandum, at 2; *see also id.* at 3-29.) Attached to the

memorandum is Body's unsworn declaration, signed under penalty of perjury pursuant

to 28 U.S.C. § 1746.[33] (*See* Doc. 88, Memorandum, Exhibit A, Declaration of Tavaris Body,

at 1 & 2 ("I Tavaris L. Body hereby declare under the penalty of perjury in accord with 28

USC § 1746 that to the best of my knowledge all of the following facts are true and

correct[.] . . . I hereby declare that all of the aforementioned facts are true and correct in

accordance with 28 USC § 1746.").)

> 1).    Prior to Trial I explained to Counsel that the firearm found
> in a suitcase at 924 Nellie Street was not mine, that the Police had lied
> about the Statement I made, that the real owner was willing to step up
> and take responsibility for the weapon and even had a receipt for it. *I also
> told Counsel that 924 Nellie Street was not my residence.* However,
> Counsel failed to conduct an investigation into this matter.

---

[33]      "Whenever, under any law of the United States or under any rule, regulation,
order, or requirement made pursuant to law, any matter is required or permitted to be
supported, evidenced, established, or proved by the sworn declaration, verification, certificate,
statement, oath, or affidavit, in writing of the person making same . . ., such matter may, with
like force and effect, be supported, evidenced, established, or proved by the unsworn
declaration, certificate, verification, or statement, in writing of such person which is subscribed
by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (2)
If executed within the United States, its territories, possessions, or commonwealths: 'I declare
(or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.
Executed on (date).  (Signature)'." 28 U.S.C. § 1746.

2).       Prior to Trial I requested that Counsel file a Motion to Suppress all evidence (including my alleged statements) as being the poisonous fruit of the illegal search. The Police manufactured/fabricated probable cause to search the vehicle by saying that a drug dog alerted on the car, but no drugs were found. The Police also lied and said that the receipt in the car said my residence was 924 Nellie Street when it actually said 928 Nellie Street which is where they already were, *and the Police further lied about my Uncle saying that I lived at 924 Nellie Street with my girlfriend*. However, Counsel failed to investigate into this matter . . . and file the appropriate Motion.

3).       In respect to [the] alleged statement that the gun was mine and I had it for protection, I did not say that. Rather, I said right from the start when the Police were waiving it in my face and trying to take a picture of it and me, that the gun was not mine. And when the Police kept saying that the gun was a 5-year sentence in itself, I said that if it were mine I would rather a firearm charge over a drug charge any day. I then said that with all of the home evasions (sic) going on around here it would be smart to own a self protection firearm. The Police then took my words and switched them all around saying that I admitted to possessing the firearm for protection purposes. However, Counsel believed the government's version of the facts without even conducting an investigation into this matter.

4).       I would have accepted a plea for 48-months had Attorney White told me about it before it expired. Rather than take my chances with a jury I would have opted for the plea deal because even if I ultimately won the case I would still end up serving several years anyway, and there would be no guarantee.

5).       I did not find out about the plea offer until Attorney Byrd told me that the Government had made that offer to Attorney White, but because he failed to show up for a pretrial hearing the offer was taken off the table. He also informed me that because of this the Government was mad and was not willing to offer me anything else besides 15-years.

6).       I never possessed a firearm in proximity to drugs or otherwise. I do not like firearms but understand why people would b[u]y them to protect themselves.

(*Id*. at 1-2 (ellipses in original; brackets and emphasis supplied).)

The government filed its response in opposition on September 21, 2012, and

therein contends that all of Body's ineffective assistance of counsel claims lack merit.

(Doc. 92, at 12-32.) Attached to the government's response in opposition is the affidavit

of Body's retained trial attorney, James M. Byrd, Esquire. (Doc. 92, Attachment C.)

> I was retained on or about December 06, 2010, to represent Tavoris (sic) Body on four distribution of crack charges that arose for September 2010 and one October 2010 possession of a firearm after conviction of a felony charge.

> Upon first interview, I was advised that when the search warrant for Tavoris (sic) Body's residence was executed, Tavoris (sic) was in the bedroom and the pistol was in a suitcase in the living room. I was told that Tavoris (sic) told the officers in his house that the gun was not his, that he did not know the gun was there and that the gun belonged to Marquis Bell. I was never given any additional name, address, telephone number or other means by which to find, locate or contact Marquis Bell.

> After receiving discovery in these cases, I saw Tavoris (sic) Body on December 15, 2010. Tavoris (sic) Body admitted he was only responsible for the Count One sale and the Count Three sale even though it alleged the wrong date but he would not plead guilty because under relevant conduct he would be sentenced for all of the cocaine alleged to have been sold. I have no notes, memory or indication that Tavoris (sic) Body ever[] denied making the statement to officer Preston Jones that the reason he had the gun was because "if a nigger kicks my door or steals my rims. I'll kill him."

> In order to obtain any not guilty verdicts from the jury on those five charges, I had to convince the jury that the confidential informant was not telling the truth. To do this I had to separate the gun from any connection with [the] drugs and I did not think that a jury would believe a police officer was just making up Tavoris (sic) Body's explanation for having the gun in his house. ***Even if I had Marquis Bell to testify that the gun in the suitcase was his, this would not prove Tavoris (sic) Body did not have knowledge, dominion and the ability to exercise control over the gun in his house that he told Officer Jones he possessed to protect his property.***

(*Id*. (emphasis supplied).)

Petitioner filed a forty-three (43) page reply (Doc. 93), same reading, in relevant

part, as follows:

> 1).      . . . EXCULPATORY WITNESS [CLAIM.]

> .      .      .

The Attorney [] goes on to state that although Body told him this [i.e., that the Police were lying about the statements he made] he was not provided with a phone number or address to reach him at. []

This is completely ridiculous, of course Body gave him an address and phone number to reach Bell at. But in any event, the Attorney's duty to conduct a "substantial investigation" into this matter would not be satisfied just because a defendant is unable to provide a phone number and address to reach the proposed exculpatory witness. []

Indeed, this is the investigation that he is supposed to be conducting. The Attorney has massive amounts of resources available to him, whereas, the petitioner being incarcerated has very little resources available to him. Even so, had Counsel told the petitioner that he was unable to reach Bell he would have tracked him down by any means necessary, but again, [B]*ell was not hard to find as he was even present for trial*.

What reasonable Attorney would not have followed up on a lead as sweet as this? . . . Instead, he [Byrd] trys (sic) to make it out like it was a plausible trial strategy to not follow up on the lead because he wanted to separate the Drug Count[]s from the Gun Count, presumably so the Jury would find Body Guilty of either one or the other instead of both.

*But in light of the evidence available, which included recorded drug buy[]s, and marked money found at the time of the search, what reasonable Attorney would focus more on acquittal of the Drug Count[]s than the Firearm Count.[34] Especially[] where the evidence on the firearm Count was much less convincing when considered in conjunction with Bell's purported testimony. Moreover, considering the evidence present in this case what reasonable Attorney would allow a client to be found guilty of a charge that he swears he is innocent of? Considering the Drug Count[]s carried a higher penalty but that Body was actually innocent of the Firearm Charge, it was not a Reasonable Trial Strategy to try and separate the charges and risk that your client is found guilty of the one charge that he is definitely not guilty of just because you did not conduct an adequate pretrial investigation.*

.    .    .

---

[34]       Perhaps a seasoned attorney, like Byrd, who thought he could more easily convince a jury that a confidential informant trying to help out a friend was lying about purchasing drugs from petitioner, as opposed to trying to convince that same jury that a police officer was lying about a statement petitioner made to him regarding a gun recovered during the course of a search of petitioner's residence.

2).   . . . FAILING TO FILE A MOTION TO SUPPRESS . . . [AND] FAILING TO STIPULATE TO THE PRIOR CONVICTION AND THE ELEMENT OF INTENT TO PREVENT PREJUDICIAL 404(b) EVIDENCE FROM BEING HEARD BY THE JURY.

.        .        .

When it came to the 404(b) evidence, the petitioner argued that Counsel was ineffective for failing to file a Pretrial or Trial Motion to Exclude and/or Stipulate to prejudicial evidence that could have stayed out of the Jury's ears and mind. That is, specifically the petitioner argued that Counsel could have kept from being admitted at Trial evidence of Body's prior felony conviction for possession of cocaine, by Stipulating to the element of intent which was not realistically at issue because actual distributions had occurred, and by Stipulating to the prior conviction which was needed to be guilty of the firearm offense, but again, not reasonably in dispute because Body was in fact previously convicted of a felony offense.

.        .        .

Had Counsel just simply "stipulated" to each of these things he could have prevented the Jury from hearing this very prejudicial evidence.

.        .        .

As the petitioner pointed out in his § 2255 Memorandum, even though the prior conviction for possession of cocaine is different than the firearm charge at issue herein, it was still extremely prejudicial to the defense because it creates the impression in the jury's mind that the Defendant has the propensity to commit crimes. And no curative instruction can take out of the jury's mind the fact that the Defendant had once before been convicted of a crime involving possession of something illegal that goes with guns like "peas and carrots."

.        .        .

[As far as counsel's failure to file a motion to suppress and request a *Franks* hearing,] had Counsel not accepted the Government's version of the facts as being correct, and conducted an investigation into this matter, Counsel would have become aware prior to Trial that: . . . (2) *[] the Police had lied when they said that Body's Uncle had told them that he lived at 924 Nellie Street with his Girlfriend*; . . . [and] (5) *[] all of Body's belongings were at 928 Nellie Street and nothing of his was at 924 Nellie Street*, and that none of the bills at 924 Nellie Street were in his name, including the lease agreement. Moreover, had Counsel conducted an investigation into this matter he would have contacted both the owner of the gun and the lease holder of 924 Nellie Street who would have

established that the gun was not his and he had no knowledge of its existence, ***and that 924 Nellie Street was not his residence, even though he often hung out there***.

.    .    .

Counsel could have gone and questioned Tommy Body who would have told Counsel what he told the petitioner[:] ***he did not tell the Police that his nephew*** <u>***lived***</u> ***at [] 924 Nellie Street. Maybe he told the Police when they asked where they could find him that he sometimes hung out next door, but he did not tell them that he*** <u>***lived***</u> ***at the 924 Nellie Street address***. Rather, the Police once again twisted the words around so they could get a search warrant on the other house because they believed, especially after they found the receipt in the car, that this was where the petitioner was <u>living</u>.

.    .    .

   <u>Indeed</u>, it is not hard to see what occurred here. The Police having struck out with their search at 928 Nellie Street were looking for Body and asked his uncle "Tommy Body" where he could be found, and Tommy Body told them that he sometimes hung out next door at his [] girlfriend[']s house. They then searched the car and found the receipt with "Tiffany Wren[']s" name on it and a next door address of <u>924</u> Nellie Street. Figuring that Body also stayed at this residence and was likely to be using it as a safe haven or stash house, the Police fabricated Probable Cause to get a search warrant of that residence.

.    .    .

3).   . . . FIRST [RETAINED] ATTORNEY . . . [AND ALLEGED] FAIL[URE] TO CONVEY A FAVORABLE PLEA OFFER[.]

.    .    .

   The only question is whether the petitioner was prejudiced by the Attorney's failure. And, as the petitioner pointed out in his initial <u>§ 2255</u> Memorandum, he would have taken the 45-month offer had counsel told him about it because there was just to[o] much risk that the Government with their massive resources and lack of morals would obtain a conviction at any cost. []

   The Government claims that this proposition is undermined by the fact that they had already filed a[] <u>§ 851</u> notice increasing the Statutory Maximum to 10-years and could not have offered less than 10-years, nor[] do they make such small offers. Now this contention is ut[t]erly ridiculous. The Government could have easily withdrawn the[i]r[] <u>§ 851</u> Notice and[/]or stipulated to its withdrawal or non[-]application in its

plea agreement. ***The Government could have also taken the mandatory minimum right out of the question by dismissing the Drug Counts and allowing the petitioner to just plead to the firearm Count, which is what he believes the offer entailed.*** Considering the problems with the Search Warrant and other problems in this case, it is not a reach to think that the Government would have offered such a plea deal. . . .

The Government cites several earlier cases that stand for the fact that in cases where the petitioner demanded trial he could not show prejudice from the Attorney's failure to convey the plea offer. However, the Supreme Court recently addressed this precise issue and held that: "to show prejudice from ineffective assistance of Counsel where a plea offer has lapsed or been rejected due to Counsel's deficient performance, defendant[]s must demonstrate a <u>reasonable probability</u> that they would have accepted the favorable offer." <u>Missouri v. Frye</u>, 132 [S].[C]t. 1399 (2012).

.     .     .

The bottom line here[] is that Body has alleged facts[] that[,] if true, would warrant relief. He Swears that the Attorney did not convey what is purported to be a favorable plea agreement, and none of the Attorney[]s or the Prosecutor in question provided Affidavits disputing this accusation. He further contends that he would have accepted this Plea Offer rather than taken his chances at trial, ***even though he is innocent of the Firearm Count***.

4).     . . . [ALLEGED] CONFLICT OF INTEREST[.]

.     .     .

The petitioner was very upset with his Attorney for failing to contest the Search Warrant and untrue versions of his Statements, even though he told the Lawyer the Police were lying and he wanted him to conduct an investigation and file the appropriate motions. . . .

Contrary to the Government's contentions, ***prejudice from this "Conflict" is apparent through the entire trial where Counsel failed to call [an] exculpatory witness[] (Bell), and failed to have the petitioner's prior conviction stipulated out***. [] It is only luck that the s[y]mpathetic Jury acquitted Body of the Drug Counts.

.     .     .

<u>Wherefore</u>, the petitioner asserts that contrary to the Government's position there was a "Conflict of Interest" present in this case, and Counsel was ineffective for failing to Withdraw and/or move the Court to determine whether a conflict of interest was present when a potential one

32

came to his attention. Indeed, it would seem proper to conduct an inquiry at that point, rather than direct the Attorney to continue representation. The Court should have directly addressed the petitioner and asked him a few questions to better understand the circumstances, and whether the Attorney's continued representation would be in the interest of justice.

5).     . . . [ALLEGED] PERJURED TESTIMONY[.]

.     .     .

The Government openly admits in their "Opposition" that indeed: "inaccurate trial testimony occurred when Corp[or]al Spencer Mistakenly recalled that the October 19th[] search was at 924 Nellie Street and that the subsequent October 26th search was at 928." *But the Government states, citing no specific portion of the Trial Record and which the petitioner cannot find[] that Officer Thornton[']s testimony [] later clarified that the reverse was actually true*.

.     .     .

6).     . . . FIREARM ENHANCEMENT[.]

The petitioner argued in his § 2255 Memorandum that Counsel was ineffective for failing to raise a specific objection to the § 2K2.1(b)(6) firearm enhancement. Specifically, the petitioner, relying on United States v. Patterson, 2009 U.S. Dist. LEXIS 67514 (N.D. Ala. 2009) argued that Counsel should have argued that the enhancement did not apply because the firearm was not found within proximity of the drugs and there was no further evidence that Body ever possessed the gun to facilitate another offense, or that he ever possessed a gun period.

.     .     .

The Government, completely ignoring the Patterson case, argues that Counsel was not ineffective for raising the aforementioned argument because the gun was found in a bag in a room immediately adjacent to the kitchen-where the microwave traces of crack cocaine was located, and in the same house where he was found possessing marijuana, and marked buy money. []

However, as the petitioner pointed out in his § 2255 Memorandum the Honorable District Court in the Northern District of Alabama very thoroughly addressed what was necessary to be guilty of a § 2K2.1(b)(6) enhancement as it applies to a drug offense. [] And, that Court found that the "proximity" or "in connection with" requirement of § 2K2.1(b)(6) was not met where the only evidence was that the firearm was found on top of the microwave in the kitchen, and the drugs were found in the bedroom. The Court specifically held: "Because 'close proximity' is meant to denote

33

extreme or immediate nearness such that it is irrefutably presumed that the firearm is connected to the commission of the offense involving drugs, the Court is not convinced, and thus does not find from the evidence, the phrase 'close proximity,' or even the word proximity, applies to this case."

.     .     .

7).     . . . APPELLATE COUNSEL . . . [AND] AT LEAST TWO MERITORIOUS ARGUMENTS THAT COUNSEL COULD HAVE RAISED ON DIRECT APPEAL.

.     .     .

The petitioner pointed out [in his § 2255 Memorandum] the Counsel did not even contest the sentence arguing that it was plain error to apply the firearm [enhancement] in this case, or that the Conviction was obtained in violation [of] Due Process where the Government failed to correct perjured testimony. Both of these arguments should have been raised on direct appeal, and would have very likely resulted in a more favorable outcome. []

.     .     .

The petitioner also argue[s] that Counsel could have argued on direct [appeal] that the Court committed substantial error when it failed to make an inquiry into the Attorney/Client Relationship when Counsel came to the Court informing [it] that he had been accused by Body for working with the Government and not doing his job.

(*Id.* at 1, 5-6, 6-7, 10, 11, 12, 13, 14, 15, 16, 20, 25, 26-27, 27, 27-28, 28, 30, 31, 32, 35-36, 36-37, 39 & 40 (some emphasis supplied; footnote added).)

Finally, the undersigned would be remiss in failing to highlight certain statements/arguments made by Body in his petition for writ of mandamus filed in the Eleventh Circuit and seeking from the appellate court an order compelling this Court to issue its decision in this matter. (Doc. 96.)

Specifically, the petitioner argues that the following "extraordinary circumstances" are present that would warrant such relief: (1) He is currently incarcerated for a crime that he is actually innocent of, a fact which he has been able to establish through *tangible evidence*, and therefore everyday that he remains in prison constitutes a fundamental miscarriage of justice[.]

34

.     .     .

Considering that Body has made a substantial showing in his § 2255 that he is "actually innocent" of the firearm offense by and through *tangible evidence* in the form of a[] *Sworn Affidavit*[35]from th[e] real owner claiming ownership and explaining that Body had no knowledge the weapon being in his closed suitcase with his other personal belongings.

.     .     .

That[']s not even mentioning the fact that the petitioner has made a substantial showing that the 4-point firearm enhancement was incorrectly applied, and that without that enhancement a sentence within the otherwise properly calculated guideline is about to expire. The petitioner asserts herein[] that all of these reasons, inter alia, constitute "exceptional circumstances" which warrant this court's compulsion of the lower Court to enter its decision or conduct an evidentiary hearing.

.     .     .

As mentioned previously, the petitioner made a substantial showing in his § 2255 Memorandum that he is actually innocent of the firearm conviction that he is currently serving a 78-month sentence for.

.     .     .

*The petitioner further swore* [in his declaration] *that the residence where both he and the gun were found[] was not his[] and actually caught the government stone cold in a lie/fraud by and through their "Response" to the § 2255. That is, the petitioner has consistently maintained that the first residence searched (928 Nellie Street), where no drugs or contraband was found, was his legal residence, and the residence that the gun was found in (924 Nellie Street )[] was not his residence*.

.     .     .

---

[35]     As previously established, the document Bell provided is a declaration, not a sworn affidavit (though entitled as such) because it does not contain language that it was "sworn to by the declarant before an officer authorized to administer oaths, such as a notary public[,]"*Delano v. Mastec, Inc.,* 2011 WL 1557863, *1 (M.D. Fla. Apr. 25, 2011) (citation and internal quotation marks omitted), nor does it contain the notary's seal, *see id.* ("'Mere submission of a document calling itself an *affidavit* does not make it an affidavit.'"); however, as previously indicated, the documents signed by Bell and Body—and attached to petitioner's motion to vacate—are unsworn declarations which have "the force and effect" of affidavits. *Id*.

As the petitioner very thoroughly set forth [in his Memorandum], had counsel properly opposed the application of this enhancement on the basis that the gun was not in "proximity" to the drugs as that term has been defined by both this Court and the District Court[]s, or that there was no "connection" between the firearm found in the closed suitcase and the drug offense, that the Court is not likely to have imposed this enhancement. The petitioner noted that absent erroneously applied enhancement his properly calculated guideline sentence would have been only **41-51 months**, a sentence which he has almost served.

.     .     .

[A]t present speed the petitioner's claims will be mooted by the expiration of his sentence, and he will have no time to file an Appeal if necessary. This is unacceptable considering that Body is not guilty of possessing the firearm, and every day that he remains in prison amplifies the "fundamental miscarriage of justice" that is taking place here.

(*Id*. at 1, 5-6, 6, 7, 8-9, 11 & 12 (some emphasis supplied).)[36]

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

In this instance, Body contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a

---

[36]   The undersigned finds petitioner's writ of mandamus interesting for that which is omitted, namely any discussion of the argument that he would have entered a guilty plea to the gun charge (that is, the charge for which he claims actual innocence) had his first attorney relayed the government's alleged 45 (or 48)-month offer, such "deal" allegedly coming to light based upon information relayed to Body by his trial attorney (Byrd).

claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States*, 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). [37] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[38]

> To meet the deficient performance prong of the *Strickland* test, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. The proper measure of attorney performance is reasonableness under prevailing professional norms, and judicial scrutiny of counsel's performance must be highly deferential. There is a strong presumption that

---

[37]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[38]  It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

> counsel's conduct fell within the range of reasonable professional
> assistance. Counsel is not incompetent so long as the particular approach
> taken might be considered sound trial strategy.

*Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. July 29, 2008) (internal

citations and quotation marks omitted), *cert. denied*, 555 U.S. 1010, 129 S.Ct. 526, 172

L.Ed.2d 385 (2008); *see also Brooks v. United States*, 248 Fed.Appx. 77, 80 (11th Cir. Sept. 7,

2007) ("The proper measure of attorney performance is reasonableness under prevailing

professional norms. Counsel is strongly presumed to have rendered adequate assistance

and to have exercised reasonable professional judgment. Counsel's performance is

deficient if counsel made errors so egregious that he was not functioning as the counsel

guaranteed under the Sixth Amendment." (internal quotation marks and citations

omitted)), *cert. denied*, 555 U.S. 867, 129 S.Ct. 157, 172 L.Ed.2d 115 (2008); *see Jones, supra,*

478 Fed.Appx. at 540 ("In determining whether counsel gave deficient assistance under

*Strickland*, the test for reasonableness is not whether counsel could have done something

more or different; instead, the movant must show that counsel's performance fell outside

the wide range of professionally competent assistance." (internal quotation marks and

bracket omitted; citation omitted)).

> To establish prejudice under *Strickland*, the movant must show more
> than that the error had some conceivable effect on the outcome of the
> proceeding. Rather, the movant must show that there is a reasonable
> probability that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable probability is a
> probability sufficient to undermine confidence in the outcome.

*Jones, supra,* 478 Fed.Appx. at 540 (quotation marks, brackets and citations omitted).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-

counsel claims, it can come as no surprise that "'the cases in which habeas petitioners

can properly prevail on the ground of ineffective assistance of counsel are few and far

between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the

*Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson, supra,* 288 Fed.Appx. at 594 ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Prior to considering Body's claims in order, the undersigned first considers the import of the two declarations petitioner has attached to his motion to vacate, his declaration and the declaration of Marquis Bell. Although each man signed the declarations under penalty of perjury, both men then demonstrably lied. The demonstrable falsehoods consist of the following: (1) Bell's statement that 924 Nellie Street "was not [] Body's residence;" (2) Bell's statement of knowledge that Body "was living at 928 [N]ellie Street; and (3) Body's statement to his attorney "that 924 Nellie Street was not [his] residence." These falsehoods are readily demonstrable based upon Body's statement to a Pretrial Services Officer on October 27, 2010 that 924 Nellie Street had been his address since May of 2010. (Doc. 18, at 1.) "The defendant reported that he has resided at the above address [924 Nellie Street], that is owned by a family member, with his adult aged brother, and two adult aged cousins, for approximately five to six months. Prior to this, he stated that he resided at 928 Nellie Street in Mobile since 2007." (*Id*.) Given the detail offered by Body to the Pretrial Services Officer, along with the fact that it now behooves petitioner to claim his residence as 928 Nellie Street, the

39

undersigned finds that Bell and Body have deliberately lied to this Court regarding Body's place of actual residence on October 26, 2010.[39] That Body and Bell would lie about petitioner's place of residence on October 26, 2010 begs the question of whether the two declarants have lied with respect to other statements contained in their declarations. As the undersigned considers each of petitioner's claims of alleged ineffective assistance of counsel, some energy will be placed into describing how Bell and Body have otherwise "shaded the truth" in their declarations.

A.   **Petitioner's Exculpatory Witness—Marquis Bell**.   Body contends that his trial attorney (Jim Byrd) was constitutionally ineffective in failing to call as a defense witness Marquis Bell, who (he claims) was actually present in court and waiting to testify that the gun seized by police on October 26, 2010 was his gun, that petitioner knew nothing about the gun being in a suitcase at 924 Nellie Street on October 26, 2010, and that 924 Nellie Street was not petitioner's residence. (*See* Doc. 88, Memorandum, at 5.) Despite also contending that Byrd told him that acquittal could be secured on the gun charge without Bell's testimony (*see id*.), Body takes great pains to try to refute Byrd's affidavit testimony that he "was never given any additional name, address, telephone number or other means by which to find, locate or contact Marquis Bell[]" (Doc. 92,

---

[39]      Body's mammoth falsehood exists not only in his declaration but, as well, in his Memorandum (*see, e.g.,* Doc. 88, Memorandum, at 9 (arguing that counsel could have found out through adequate pretrial investigation that "924 Nellie Street was not his residence, even though he often hung out there.")), in his reply (*see, e.g.,* Doc. 93, at 15 (again arguing that counsel should have discovered through pretrial investigation that "924 Nellie Street was not his residence, even though he often hung out there."), and in his petition for writ of mandamus (Doc. 96, at 9 ("[T]he residence that the gun was found in (924 Nellie Street), was not his residence.")). Thus, Body has not, in fact, "caught the government stone cold in a lie/fraud by and through their 'Response'" (Doc. 96, at 8-9); instead, Body has indelibly painted himself a liar by "sw[earing] that the residence where both he and the gun were found, [924 Nellie Street,] was not his [residence.]" (*Id*. at 8.)

Attachment C) by arguing that "of course [he] gave [Byrd] an address and phone number to reach Bell[.]" (Doc. 93, at 5.) Indeed, if Bell was in Court ready to testify there would be no reason for Body to allege that Byrd failed to "track down" Bell as part of his pretrial investigation based upon the contact information supplied to him by petitioner. Instead, Body would only be claiming that Byrd was deficient in failing to call Bell as a defense witness. Of course, petitioner does not stop but comes "full circle" by arguing that Byrd told him that he did not need Bell's testimony to gain an acquittal on the gun charge. This argument is quite difficult to digest not only given Byrd's pre-trial statement to the Court that he did not understand why Body was insisting on a trial (*see* Doc. 77, T.T. 3) but, as well, given Byrd's clear "intimation" to the jury in his questioning of witnesses that the gun was not petitioner's gun (*see id*. at 168-170, 189 & 193-194). In light of the fact that Byrd was "intimating" that the gun was not Body's, it is impossible for the undersigned to believe that Byrd would not have called to the stand a witness (Bell) who could establish that the gun in question was not Body's gun. Accordingly, because petitioner offers mutually-exclusive arguments regarding his alleged exculpatory witness, while Byrd does not, the undersigned is not inclined to find Byrd deficient in this regard.

However, even assuming Byrd's deficiency, Body has simply failed to establish that he was prejudiced by Bell not testifying. In other words, even had Bell testified that the gun was his gun and that Body did not know the gun was in the suitcase in the dining room of a house (924 Nellie Street) in which Body, and Body alone, was found on October 26, 2010, petitioner cannot show that a reasonable probability exists that the result of his proceeding would have been different, given the evidence offered by the government establishing Body's constructive possession of the gun. The evidence

offered by the government establishes, again, that when the search warrant was executed at 924 Nellie Street on October 26, 2010, only Body was at the residence and on the keychain seized from his person was a key allowing entry to 924 Nellie Street. Moreover, after petitioner was informed of his *Miranda* rights, Deputy Preston Jones asked Body why he had the gun, prompting Body to tell Jones that he had the weapon for protection. Given the Eleventh Circuit's specific determination that the evidence offered at trial was "sufficient to support the jury's finding that Body exercised 'dominion or control' over the firearm and thus there was sufficient evidence to support his conviction[,]" (Doc. 84, at 4), the undersigned must agree with petitioner's attorney that "even if [he] had Marquis Bell to testify that the gun in the suitcase was his, this would not prove Tavoris (sic) Body did not have knowledge, dominion and the ability to exercise control over the gun in his house that he told Officer Jones he possessed to protect his property[]" (Doc. 92, Attachment C). *Compare United States v. Johnson,* 290 Fed.Appx. 214, 226-227 (11th Cir. July 3, 2008) ("With respect to the Johnsons's § 922(g) convictions, the evidence was sufficient for the jury to conclude that both Isaac and Michelle had constructive possession over the firearms found in the apartment. As discussed above, there was evidence establishing that they both exercised dominion and control over the residence. With respect to Isaac, Diaz testified that he appeared to have sole authority over who was granted access to the second floor, Isaac's personal belongings were discovered in the apartment, and Isaac was located in the same room as two firearms in plain view when the search warrant was executed. With respect to Michelle, she was responsible for paying the utility bills for the apartment, her job application was located inside the apartment, and she physically was located inside the apartment when the search warrant was executed." (internal citation omitted)), *cert.*

*denied,* 555 U.S. 977, 129 S.Ct. 475, 172 L.Ed.2d 340 (2008) and 555 U.S. 1122, 129 S.Ct. 955,

173 L.Ed.2d 150 (2009), *with United States v. Beeman,* 386 Fed.Appx. 827, 834 (11th Cir.

July 8, 2010) ("Constructive possession . . . 'need not be exclusive, and can be proven

circumstantially by ownership, dominion, or control over the premises on which the

[contraband] is located.' A reasonable jury could have concluded that Beeman was in

knowing possession of the 9-millimeter Glock and the 35-caliber ammunition because he

exercised dominion or control over the house and vehicle, both of which were owned by

Beeman, in which the firearm and ammunition were found. ***Beeman's brother's***

***testimony that he owned the ammunition is of no consequence because constructive***

***possession need not be exclusive.***" (internal citations omitted; emphasis supplied)) and

*United States v. Wright,* 392 F.3d 1269, 1273, 1273-1274 & 1274 (11th Cir. 2004) ("The

government need not prove actual possession in order to fulfill the 'knowing'

requirement of § 922(g)(1). Rather, it may be shown through constructive possession.

The firearm need not be on or near the defendant's person in order to amount to

knowing possession. Moreover, we have held . . . [] a defendant had knowing possession

of a firearm when driving a car with the weapon beneath the driver's seat. In the instant

case, a reasonable jury could believe beyond a reasonable doubt that Wright was in

knowing possession of the firearm. Possession can be shown by circumstantial as well as

direct evidence. Possession can be either actual or constructive. In order to establish

constructive possession, the government must produce evidence showing ownership,

dominion, or control over the contraband itself . . . or the vehicle in which contraband is

concealed. There is no dispute that there was a weapon in the vehicle. Officers found the

firearm under Wright's seat, next to an open bottle of cold beer. Wright owned the

automobile in which the firearm was carried. Wright had been operating the car when

43

the officers pulled him over. Evidence showed Wright was driving under the influence and once officers attempted to arrest him, Wright aggressively resisted, which could indicate that Wright only resisted after he realized officers would impound the car and discover the gun. . . . ***The fact that Wright's father testified that the gun belonged to him and that he accidently left it in his son's vehicle does not detract from the evidence***." (internal citations and quotation marks omitted; emphasis supplied)), *cert. denied,* 544 U.S. 968, 125 S.Ct. 1751, 161 L.Ed.2d 615 (2005). Simply put, there is no reasonable probability that the result of Body's trial would have been different had Bell testified given Deputy Jones' testimony regarding Body's "possession" confession and the other evidence offered at trial establishing petitioner's dominion and control over the premises in which the gun was found. *Compare Brower v. Secretary for the Department of Corrections,* 137 Fed.Appx. 260, 265-266 & 266 (11th Cir. 2005) ("Brower also argues he was denied effective assistance of counsel when his trial counsel did not call two witnesses. One of the witnesses, a forensic expert, would have provided testimony that, based on the trajectory of the bullets, the shots must have been fired by a taller person. This witness would have also called into question the veracity of the information gleaned from the crime scene investigation. The other witness would have impeached the testimony of the government's star witness. . . . We agree with the state habeas court and the district court that Brower cannot show prejudice. . . . As the court of appeals stated on direct appeal, Brower's guilt was supported by 'overwhelming evidence.' . . . As the state habeas court elaborated: 'The Defendant made several incriminating statements to various law enforcement officers.' . . . The court also recounted the testimony of two witnesses at trial to whom Brower had confessed the crimes. In light of this overwhelming evidence, we conclude Brower cannot show prejudice."), *cert. denied sub nom. Brower v. Crosby,* 546 U.S.

1021, 126 S.Ct. 663, 163 L.Ed.2d 536 (2005), *with Fortenberry v. Haley*, 297 F.3d 1213, 1228-

1229 (11th Cir. 2002) ("It is worth reiterating that the absence of exculpatory witness

testimony from a defense is more likely prejudicial when a conviction is based on little

record evidence of guilt. . . . In this case, although there was no conclusive forensic or

eyewitness evidence establishing Fortenberry's guilty, the jury had before it

Fortenberry's multiple uncoerced confessions, along with strong evidence that placed

him in possession of the murder weapon. We find that no reasonable likelihood that the

jury would have discredited this evidence had it heard the testimony Fortenberry says

his lawyers should have discovered and presented. Accordingly, we find that trial

counsel's alleged failure to perform an adequate investigation of Underwood did not

prejudice Fortenberry's conviction."), *cert. denied,* 538 U.S. 947, 123 S.Ct. 1622, 155

L.Ed.2d 490 (2003).

      B.    **Byrd's Failure to File Pretrial Motions, including a Motion to Suppress and a Motion to Exclude 404(b) Evidence**.

      As part of Body's overarching claim that Byrd did not perform an adequate

pretrial investigation, the petitioner contends that his trial attorney should have filed a

pretrial motion to suppress (along with a request for a *Franks* hearing) and a pretrial

motion to exclude 404(b) evidence. Perhaps recognizing the futility of his second claim,

given that the Court certainly allowed petitioner to assert 404(b) objections during trial

and he did just that (*see* Doc. 77, T.T. 4-7 & 114-115), petitioner asserts that his trial

attorney should have "stipulated" his prior felony conviction for possession of cocaine

so that such evidence would not have pervaded the "ears and minds" of the jury. The

undersigned takes each of these claims in turn.

Initially, the undersigned would note that Byrd cannot be found constitutionally deficient for failing to file a pretrial motion to suppress because, as noted by the Eleventh Circuit, Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure "requires that a motion to suppress be filed before trial[]" (Doc. 84, at 2), and Body did not retain Byrd's services until after the time for filing pretrial motions, including Rule 12(b) motions, expired (*compare* Doc. 17, at 2 (deadline for filing pretrial motions set at November 18, 2010) *with* Doc. 27 (Byrd's notice of appearance filed December 21, 2010) and Doc. 92, Attachment C (Byrd's affidavit statement that he was retained by Body on or about December 6, 2010)).[40] Therefore, any fault for the failure to file a timely pretrial motion to suppress must lie at petitioner's feet and his inability to "land on" an attorney to represent him in this matter.

Moreover, petitioner has not established in the present petition how Byrd would have had the ability to establish that the affidavit in support of the search warrant served on October 26, 2010 contained material false statements that were knowingly or recklessly made. As the Supreme Court made clear in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the bar for challenges to warrant-based searches is high:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those

---

[40]     While all of what Body contends are pre-warrant "lies" are dealt with in connection with Byrd's alleged failure to request a *Franks* hearing, the undersigned would simply make the observation now that petitioner's allegations regarding how the "police" lied about his statements to them (twisting his words around) and how none of his "belongings" were at 924 Nellie Street relate to matters that occurred after the search and, therefore, such "lies" have nothing to do with the validity of the search warrant.

allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-172, 98 S.Ct. at 2684-2685. In his motion to vacate, petitioner states the following: "Had counsel conducted the proper investigation he could have made this preliminary showing by pointing out that the Police lied when they said the receipt found in the car stated that Body's residence was 924 Nellie Street where it actually said it was 928 Nellie Street, the place that they were already searching. And that the Police lied when the[y] stated in the Affidavit that Body's Uncle said that he lived at 924 Nellie Street with his girlfriend, and also lied when they said the drug dog hit on the car." (Doc. 88, Memorandum, at 10-11.) Beyond noting, again, that 924 Nellie Street was, in fact, Body's residence, the affidavit in support of the search warrant that was executed on 924 Nellie Street on October 26, 2010, fails to contain any reference to a "drug dog hit on the car" or reference to a "receipt" found in the car searched on October 19, 2010. Therefore, it would have been impossible for Byrd to prove the affiant made "false statements" about matters not contained in the search warrant affidavit. In addition, petitioner has not provided the affidavit of his uncle establishing that the search warrant affidavit statement of Thornton recounting what he had learned from Tommy Body regarding petitioner's residence was "false" and, therefore, the undersigned is

47

unable to discern how Byrd could have secured a *Franks* hearing on such a thin thread, particularly since 924 Nellie Street was his client's residence. Finally, even putting aside the Tommy Body statement, Byrd could not establish petitioner's entitlement to a *Franks* hearing because there was "sufficient content in the warrant affidavit to establish probable cause," *Franks, supra,* 438 U.S. at 172, 98 S.Ct. at 2684, namely information supplied by the confidential informant that Body was selling crack cocaine between 924 Nellie Street and 928 Nellie Street and that when the confidential informant made a fourth controlled buy from Body on October 19, 2010, he witnessed Body exit the rear door of 924 Nellie Street and reenter 924 Nellie Street when the drug "deal" was completed. As noted in *Franks,* "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." Id. at 171, 98 S.Ct. at 2684. Thus, because petitioner would not have been entitled to a *Franks* hearing, his attorney was not deficient in failing to seek such a hearing.

In light of the foregoing, it can come as no surprise that Body's attorney correctly observed just prior to trial that both search warrants, on their face, were "good" and did not press any attack with respect to the October 26, 2010 search until Corporal Spencer's mistaken testimony that the search conducted that date occurred at 928 Nellie Street. Byrd was in no position prior to trial to make this argument, since it was founded on Spencer's testimony, even though the Court initially overruled Byrd's motion to suppress evidence on the basis of his failure to file a motion to suppress prior to trial. When the Court fully understood the import of Byrd's position, which occurred during the course of Deputy Thornton's testimony when the witness testified that the only house searched on October 26, 2010 was 924 Nellie Street, Byrd's oral motion to

suppress was denied. (Doc. 77, T.T. 136; *see also* Doc. 42, at 2 ("During the government's presentation, the defendant's oral motion to suppress search as unconstitutional [] was **DENIED**.").) Accordingly, petitioner cannot establish prejudice because once Byrd found a basis to object to the search, his oral motion to suppress was denied.[41]

Turning to Body's § 404(b) claim, the undersigned finds that it fares no better. First, petitioner's trial attorney did indeed object to introduction of the § 404(b) evidence with respect to the drug counts and, therefore, he cannot be found to have been deficient because the Court overruled the asserted objections. Moreover, Body was not prejudiced by admission of the § 404(b) evidence because he was acquitted by the jury of all four drug counts stated in the indictment, the very counts for which his prior cocaine possession conviction was offered as § 404(b) evidence. Body nevertheless asserts that Byrd should have "stipulated" to his prior drug possession conviction to keep the conviction from the "ears and minds" of the jury (Doc. 93, at 11) with respect to all counts of the complaint.[42] Of course, Byrd could have entered such stipulation, but the jury still would have been instructed that Body had stipulated that he had a qualifying prior felony conviction. *Compare United States v. Delvalle,* 444 Fed.Appx. 336, 339 & 342 (11th Cir. Sept. 20, 2011) (describing district court's instructions to the jury that the parties had stipulated that the defendant had been convicted of a felony—and,

---

[41]    In other words, there is simply nothing about the manner in which Byrd approached the warrant-based search of 924 Nellie Street on October 26, 2010 which establishes either prong of the *Strickland v. Washington* standard.

[42]    The details of a prior conviction are only "improperly admitted when the defendant otherwise admits his status as a felon[.]" *United States v. Albertie,* 382 Fed.Appx. 876, 879 (11th Cir. Jun. 14, 2010). Even then—that is, even if the details of a conviction are admitted after the defendant stipulates to being a convicted felon—such error is harmless if the reviewing court can say, after considering the evidence of a defendant's guilt, the "the error did not have a substantial influence on the outcome of the case." *Id.* at 880.

as well, that the weapon found was a firearm in or affecting interstate commerce—and explaining that "[a] stipulation serves as proof only of the facts stated in the stipulation[.]") *with United States v. Wiliams,* 177 Fed.Appx. 914, 924 (11th Cir. Apr. 24, 2006) ("Williams stipulated that he was a convicted felon, and the jury was not given details of the nature of his prior offense."), *cert. denied,* 549 U.S. 915, 127 S.Ct. 260, 166 L.Ed.2d 202 (2006). And while the jury, admittedly, would have been given no details of Body's prior conviction—that is, the jury would not have been told that his prior conviction was one for possession of cocaine—it is beyond rank speculation to suggest that the jury convicted Body of the gun charge because it knew of the nature of his prior conviction and drugs and guns go together like "peas and carrots," *see United States v. Lopez,* 649 F.3d 1222, 1242 (11th Cir. 2011) ("[A]s Forrest Gump might say, drugs and guns go together like peas and carrots."), particularly when it is recognized that the jury's verdict of acquittal on all drug counts in this case is a resounding rejection of the "peas and carrots" notion.[43]   Accordingly, Body has established neither cause nor prejudice relative to his § 404(b)/stipulation argument.

   **C.   <u>John White and the Alleged Plea Offer</u>**.  Petitioner contends that the first attorney he retained in this matter, John L. White, was constitutionally ineffective for failing to convey a favorable plea offer that was subsequently taken off the table when

---

[43]      Indeed, as aforesaid, the evidence offered at trial clearly established Body's constructive possession of the gun and the evidence also established that the firearm was in or affecting interstate commerce, such that any stipulation by Byrd that Body was previously convicted of a felony would have established petitioner's violation of 18 U.S.C. § 922(g)(1) beyond a reasonable doubt. *See, e.g., Beeman, supra,* 386 Fed.Appx. at 834 ("To sustain a conviction under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant was previously convicted of a felony; (2) that he knowingly possessed the firearm or ammunition; and (3) that the firearm or ammunition was in or affecting interstate commerce.").

counsel failed to appear for an ordered pretrial conference. According to Body, his trial attorney (Byrd) told him that White was extended a plea offer of 45 or 48 months, depending upon what piece of paper one is reading (*compare* Doc. 88, Body declar., at ¶ 4 ("I would have accepted a plea for 48-months . . . .") *with id.*, Memorandum, at 17-19 (numerous references to 45-month plea offer having been extended)), but that the offer was "taken off the table" when White failed to appear for the pretrial conference on December 6, 2010. Beyond recognizing that this claim is based upon nothing but the alleged—but clearly hearsay—statement of his trial attorney,[44] Body offers no logical explanation for the prosecutor to tie acceptance of the offer to White's appearance at the pretrial conference when all attorneys in this district know that such conference will take place within the week it is set regardless of an attorney's initial failure to attend (*compare* Doc. 24 (White failed to appear on December 6, 2010) *with* Docs. 25-26 (White appears for the conference on December 7, 2010)). Even more important, this claim is affirmatively contradicted by the court record. The numbers thrown out by Body (45 or 48 months) as making up the offer simply do not compute because prior to the pretrial conference the only sentencing "numbers"[45] the parties were aware of (and that were being talked/bandied about) were those generated by the Probation Office—based on all counts—in the pre-trial probation office report and shared with the parties during

---

[44]    In short, there is no credible evidence, such as a written plea offer, etc., that such an offer was extended by the Assistant United States Attorney in this case.

[45]    The sentencing guideline numbers shared with petitioner and his attorney at the probation office conference, depending upon whether Body was willing to accept responsibility, ranged from 70-87 months all the way to 97-121 months. (Doc. 22, at 7.) In addition, Body was told that the statutory mandatory minimum penalty for Counts 1 and 2 was 5 years and possibly higher, if enhanced. (*Id.*) And, of course, as set forth above, the government notified Body, on December 3, 2010, that it was seeking an enhanced statutory sentence of 10 years. (Doc. 23.)

the November 22, 2010 probation office conference, a conference which both White and Body attended (Doc. 22, at 1, 2 & 7), and those contained in the government's notice of seeking an enhanced sentence (Doc. 23).  Just four days before the pretrial conference, the government filed a notice that the defendant would be subject to an enhanced sentence if he was convicted on any of the four drug charges.  Thus, the government, upon conviction of any drug count, would be seeking "10 years custody up to life, a $4,000,000 fine and 8 years of supervised release."  (*Id.*, Enhancement Information, December 3, 2013.)[46] Based upon the strength of the government's case against Body on the drug charges—a confidential informant in the wings to testify that he bought crack cocaine from petitioner on four occasions, evidence of crack cocaine residue in the microwave of the residence in which Body was arrested, and a search of petitioner's "body" on arrest revealing four "marked" one hundred dollar bills supplied by police to the confidential informant to buy the crack on October 19, 2010[47]—the only offer the government could have been interested in extending prior to the pretrial conference was one in which Body would plead guilty to at least one drug count for which

---

[46]     The undersigned has listened to the digital record of the pretrial conference and rather than hearing a withdrawal of any plea offer based on the fact that the conference was held on December 7 as opposed to December 6, counsel informed Magistrate Judge Bivins that a plea was unlikely because the government was seeking an enhanced sentence.  FTR Digital Audio Recording, Criminal Action 10-0232-CG, December 7, 2010 at 10:29:24 a. m.

[47]     Indeed, petitioner appears to concede the relative strength of the government's case as to the drug counts (*see* Doc. 93, at 6 & 11 ("But in light of the evidence available, which included recorded drug buy[]s, and marked money found at the time of the search, what reasonable Attorney would focus more on acquittal of the Drug Count[]s than the Firearm Count. . . . [Counsel should have stipulated] to the element of intent which was not realistically at issue because actual distributions had occurred[.]")), and his trial attorney has relayed to the undersigned that, on December 15, 2010, "Body admitted he was [] responsible for the Count One sale and the Count Three sale even though it alleged the wrong date but he would not plead guilty because under relevant conduct he would be sentenced for all of the cocaine alleged to have been sold." (Doc. 92, Attachment C, Byrd aff.)

enhancement would render a statutory minimum sentence of 10 years. More to the point, the "numbers" now served up to this Court by Body have no connection with any form of "reality" until after the petitioner's trial and conviction of the gun charge alone, petitioner being acquitted of all four drug counts.[48] Those numbers (45 or 48 months), however, are what Body has used to fabricate an ineffective assistance of counsel claim against White. There can be no deficient performance by an attorney based on a non-existent claim.[49]

---

[48]        Following petitioner's conviction of the gun count, the Probation Office completed its Presentence Investigation Report and therein determined Body's base offense level was a 20, prior to any adjustments. (Doc. 56, at 9-10.) Of course, a base offense level of 20, combined with a criminal history category of III (*id.* at 14), would render a guideline sentence of 41 to 51 months under the Sentencing Table. However, any alleged offer of 45 (or 48) months (as petitioner claims) would, in truth, be "illusory" in the context of a plea inasmuch as defendants pleading guilty in this Court are specifically informed that any "guideline range" suggested to them by their attorney or anyone else cannot be relied upon until conclusion of the presentence investigation report. This is not only because there are too many "impactful" variables attendant with sentencing under the guidelines, including acceptance of responsibility and other mitigating and enhancing information (e.g., the 4-level enhancement utilized in this case), but, as well, because the Court is the ultimate sentencing authority. Thus, for instance, the offer suggested by petitioner could not have been made because even assuming a base offense level of 20, same would be increased by 4 levels in accordance with § 2K2.1(b)(6) to a 24, and then decreased by 2 levels to a 22 for acceptance of responsibility. The Sentencing Table in such instance would render a sentencing range of 51 to 63 months, thereby uncovering as apocryphal petitioner's assertion against John White. Conversely, assuming a plea situation with petitioner's acceptance of responsibility and no enhancing information, the base offense level would be an 18, rendering a sentencing range of 33 to 41 months and another dagger in petitioner's unbelievable claim.

[49]        Even "swallowing whole" Body's unsupported allegation against White, petitioner has not established any prejudice. "[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted the terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012); *compare id. with Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012) ("In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have (Continued)

prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it[.]" (citations omitted)). Given Body's consistent and unrelenting position that he is and has always been actually innocent of the firearm count (*compare* Doc. 88, Memorandum, at 5 ("[P]etitioner told Counsel that the gun was not his, that it was found in a suitcase with someone else['s clothes, that he did not know it was there, it was not his residence where it was found, and the person who owned the gun was willing to come in and testify to all of this."); Doc. 93, at 1-2, 4 & 6-7 ("Counsel . . . fail[ed] to take heed of his notice that the firearm discovered in the 924 Nellie Street Residence was his visiting friend['s (Marquis D. Bell) who had a receipt for the weapon and was willing to testify that the Suitcase the gun was found in was also his, and that the petitioner had no idea that the gun was present and in the Suitcase. . . . The bottom line[] is that there was no credible evidence of the petitioner's guilt of the firearm, and any little thing would likely have influenced the jury to also acquit him of the gun charge along with the drug Count[]s.  . . . [C]onsidering the evidence present in this case[,] what reasonable Attorney would allow a client to be found guilty of a charge that he swears he is innocent of?"); Doc. 96, at 1, 5-6 & 12 ("[P]etitioner argues . . . [h]e is currently incarcerated for a crime that he is actually innocent of, a fact which he has been able to establish through tangible evidence, and therefore everyday that he remains in prison constitutes a fundamental miscarriage of justice[.] . . . Body has made a substantial showing in his § 2255 that he is 'actually innocent' of the firearm offense and through tangible evidence in the form of a[] Sworn Affidavit from th[e] real owner claiming ownership and explaining that Body had no knowledge [of] the weapon being in his closed suitcase with his other personal belongings. . . . [A]t present speed[,] the petitioner's claims will be mooted by the expiration of his sentence, and he will have no time to file an Appeal if necessary. This is unacceptable considering that Body is not guilty of possessing the firearm, and every day that he remains in prison amplifies the 'fundamental miscarriage of justice' that is taking place here.") *with* Doc. 92, Attachment C, Byrd aff. ("Upon first interview, I was advised that when the search warrant for Tavoris (sic) Body's residence was executed, Tavoris (sic) was in the bedroom and the pistol was in a suitcase in the living room. I was told that Tavoris (sic) told the officers in his house that the gun was not his, that he did not know the gun was there and that the gun belonged to Marquis Bell. I was never given any additional name, address, telephone number or other means by which to find, locate or contact Marquis Bell."), his conclusory allegations that he would have pled guilty to the gun charge (Doc. 93, at 26 & 27 ("[A]s the petitioner pointed out in his initial § 2255 Memorandum, he would have taken the 45-month offer had counsel told him about it because there was just to[o] much risk that the Government with their massive resources and lack of morals would obtain a conviction at any cost. . . . The Government could have [] taken the mandatory minimum right out of the question by dismissing the Drug Counts and ***allowing the petitioner to just plead to the firearm Count, which is what he believes the offer entailed.***" (emphasis supplied)) are as opportunistic as they are unbelievable. *Compare Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [petitioner's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.") *with Welch v. United States*, 370 Fed.Appx. 739, 743 (7th Cir. Apr. 19, 2010) ("[E]ven now Welch continues to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted a plea deal[.] . . . Thus, Welch's claim also fails for lack of prejudice."); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from

(Continued)

54

**D.** **Byrd's Alleged Failure to Withdraw due to a Conflict of Interest**.

Petitioner claims that Byrd should have moved to withdraw or asked the Court to make inquiry into whether a conflict of interest was present when counsel supplied the court with information suggesting a major problem with the attorney-client relationship. (Doc. 88, at 20-22; Doc. 93, at 28-31.) Although Byrd certainly indicated to the Court just prior to the start of the trial that Body was unhappy with his alleged failure to perform certain tasks, as noted by the Court: "*If he hasn't asked the Court to relieve you of your duty, you're going to be just right along doing the best you can under the circumstances.*" (Doc. 77, T.T. 3 (emphasis supplied).) Of course, this is exactly what Byrd proceeded to do in fine manner, masterfully convincing the jury to acquit Body on all drug counts. And because petitioner filed nothing with the Court indicating that he desired Byrd's withdrawal, Byrd was neither deficient in not withdrawing nor in asking the court to make further inquiry into whether a conflict of interest was present. This is particularly the case since there was absolutely and categorically no actual conflict of interest.

As explained by the Eleventh Circuit in *McCorkle v. United States*, 325 Fed. Appx.

---

his lawyer."), *cert. denied*, 540 U.S. 1199, 124 S.Ct. 1460, 158 L.Ed.2d 116 (2004); and *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir.) (petitioner was unable to establish prejudice because his post-trial assertions of innocence demonstrated that he would not have entered a guilty plea), *cert. denied*, 525 U.S. 1009, 119 S.Ct. 527, 142 L.Ed.2d 437 (1998). In other words, it is impossible for the undersigned to believe petitioner in this instance because, on the one hand, he has at all stages of his criminal case vehemently denied his guilt of the firearm charge, only to now, like a Whirling Dervish, tergiversate and claim that he would have pled guilty to that very charge. Moreover, as previously explained, petitioner has not established that a reasonable probability exists that this Court would have accepted the terms of the offer because it is clear this Court would have been unable to accept same since all mitigating and enhancing information would have rendered an adjusted offense level of 22 and a sentencing range of 51 to 63 months, based upon petitioner's admitted criminal history category of III. Thus, petitioner cannot establish prejudice.

804, 2009 WL 1132355 (11th Cir. Apr. 28, 2009), *cert. denied,* 558 U.S. 865, 130 S.Ct. 176,

175 L.Ed.2d 111 (2009):

> Where an ineffective assistance claim is based on a conflict of interest, a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance. An actual conflict of interest occurs when a lawyer has inconsistent interests. The conflict cannot be merely possible, speculative, or hypothetical.
>
> To distinguish between actual and possible conflicts of interest, we will not find an actual conflict of interest unless the defendant can point to specific instances in the record to suggest an actual conflict or impairment of his interests. The defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to himself. If he did not make such a choice, the conflict remain(s) hypothetical. To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.

*Id.* at 808 (internal quotation marks, citations, and brackets omitted). As was true in

*McCorkle*, the same is true here and that is Byrd "did not have an actual conflict of

interest that adversely effected his representation" of Body;[50] therefore, "petitioner was

not denied effective assistance of counsel." *Id*.[51]

**E.**      **Byrd's Alleged Failure to Oppose the Government's Failure to Correct**

**Perjured Testimony**.   Body contends that Byrd was constitutionally deficient in failing

to oppose the government's failure to correct the perjured testimony of Corporal

Spencer and Deputy Thornton. According to petitioner, both officers engaged in

perjurious behavior, as follows: (1) "in direct contradiction" to the search warrant

---

[50]        In particular, petitioner has made no factual showing of inconsistent interests.

[51]        Petitioner's claim in this regard is specious.

affidavit, both men testified that the drug buys occurred at 924 Nellie Street instead of 928 Nellie Street; (2) both men testified that the gun was found at 928 Nellie Street; and (3) both men testified that the receipt found in the car stated that 924 Nellie Street was Body's residence "when it actually stated that it was 928 Nellie Street." (Doc. 88, Memorandum, at 22-23.) Given the manner in which petitioner has couched this claim, he must show both that the testimony is false and that the government knowingly used such testimony.

There can be little doubt that "[a] conviction obtained through the knowing use of perjured testimony is fundamentally unfair and a violation of due process." *Malmsberry v. Secretary, Department of Corrections*, 2012 WL 834120, *8 (M.D. Fla. Mar. 13, 2012), citing *United States v. Bagley*, 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

> A petitioner can establish a violation by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment." *United States v. Elso*, 364 F.App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)). A petition must show that (1) the statements were "actually" false, (2) the statements were material, and (3) the prosecution knew they were false. *Id*.

*Malmsberry*, at *8. As noted in *United States v. Alzate*, 47 F.3d 1103 (11th Cir. 1995), a "falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony *could have* affected the judgment of the jury.'" *Id*. at 1110 (emphasis in original; citations omitted).

In this case, as established in the recitation of facts, Corporal Spencer mistakenly testified that the search warrant executed by police on October 26, 2010 was executed at 928 Nellie Street, instead of 924 Nellie Street (Doc. 77, T.T. 105-110); however, Deputy Thornton's testimony clearly established that Spencer's testimony was incorrect as he

testified that the residence actually searched on October 26, 2010, was 924 Nellie Street (*id*. at 136). Thus, there is no problem with this testimony and, in truth, petitioner does not focus on this testimony. And for good reason since Thornton corrected the "incorrect" testimony of Spencer, *see United States v. Bailey*, 123 F.3d 1381, 1395-1396 (11th Cir. 1997) ("Instead of showing perjury, we conclude that Bailey has demonstrated nothing more than a memory lapse, unintentional error, or oversight by Agent Hudson."), resulting in the government correcting Spencer's testimony, *cf. United States v. Elso, supra,* 364 Fed.Appx. at 599 (in trying to establish a due process violation, a petitioner must demonstrate that the prosecutor knowingly used perjured testimony or failed to correct what she later learned was false testimony).

Because Body does not focus on the foregoing testimony, the undersigned looks at the testimony petitioner claims is perjurious in reverse order. Petitioner contends that both Spencer and Thornton testified that the receipt found in the October 19, 2010 search of his car reflected 924 Nellie Street as the petitioner's residence. This claim by petitioner is decidedly false inasmuch as Corporal Spencer specifically testified that the receipt found in petitioner's car reflected an address of 928 Nellie Street (Doc. 77, T.T. 104-105) and Deputy Thornton's testimony cannot be read in the manner petitioner suggests (*see id*. at 145-153). Next, Body contends that both Spencer and Thornton testified that the gun was found at 928 Nellie Street. Again, petitioner's claim is apocryphal inasmuch as Thornton's testimony is clear that the gun was found during the October 26, 2010 search of 924 Nellie Street (*compare id.* at 136 *with id*. at 141) and Spencer gave absolutely no testimony regarding the search conducted by police on October 26, 2010 (*id*. at 109-110). Finally, petitioner contends that "in direct contradiction" to the search warrant affidavit, both men testified that the drug buys

occurred at 924 Nellie Street instead of 928 Nellie Street. Spencer gave no such testimony. Indeed, in describing the two drug buys the confidential informant, Walter Mosley, made for him, Spencer only identifies Nellie Street, no particular house number. (*See* Doc. 77, T.T. 86-110.)  As for Deputy Thornton, this witness testified that with respect to the two drug buys he supervised (*see id*. at 127-134), the "information" the police had was that these drug buys did occur at 924 Nellie Street (T.T. 135). Thornton's testimony is certainly not in direct contradiction to the search warrant affidavit inasmuch as that affidavit clearly indicates that with respect to the fourth drug buy (that is, the second buy supervised by Thornton), Body exited the rear door of 924 Nellie Street and reentered 924 Nellie Street following consummation of the drug transaction. (*See* Doc. 92, Attachment A, at 17.)

In light of the foregoing, petitioner simply has not established that the testimony of either Spencer or Thornton was false and certainly has made no showing that the prosecution knowingly used perjured testimony. *See United States v. Jones,* 614 F.2d 80, 82 (5th Cir. 1980) ("[F]or perjury by a witness to constitute grounds for relief appellant would have to show that the Government knowingly used the perjured testimony. Here, Jones has completely failed to support his claim with any evidence that there was either perjured testimony or knowing use of perjured testimony by the Government." (internal citation omitted)).[52] Thus, Byrd was not deficient in failing to raise this issue. *See Malmberry, supra,* at *9 ("Petitioner has not proven that perjured statements were made in this case. As such, trial counsel did not act deficiently in failing to raise this

---

[52]    All decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981).

issue.").[53]

**F.    Byrd's Alleged Deficient Performance at Sentencing.** Body's final

contention with respect to Jim Byrd relates to Byrd's failure at sentencing to object to

the four level enhancement on the basis that "there was insufficient evidence to support

it where there was absolutely no evidence that the petitioner ever possessed a firearm in

proximity to drugs." (Doc. 88, Memorandum, at 25.) Specifically, petitioner contends

that Byrd should have relied on *United States v. Patterson*, 2009 WL 2324087 (M.D. Ala.

July 29, 2009) in making a "proximity" argument. (*See id.* at 26.) In that case, the court

prefaced its U.S.S.G. § 2K1.1(b)(6)[54] discussion by noting that its inquiry was "by

necessity, heavily dependent on the factual context of a particular case[,]" *id.* at *2, and

then proceeded to find, based upon the very facts presented to it, that the firearm was

not in "close proximity" to the marijuana.

> The firearm was found in the kitchen of Patterson's home, on top of
> a microwave. A small amount of marijuana was found in a bedroom
> elsewhere in the house. While "close proximity" is surely satisfied by the
> simultaneous possession of drugs and firearms on the person of an
> offender, *the evidence presented here* does not convince the court to
> expand the reach of "close proximity" to the entire house. Here, there is
> no evidence in the record about the size of the house or the proximity of
> the rooms. There is no evidence that Patterson was selling drugs
> throughout the house. There is no evidence that the firearm and the drug-
> related materials were in the same cabinet or even in the same small room,
> let alone on Patterson's person or within arm's reach. Because "close
> proximity" is meant to denote extreme or immediate nearness such that it

---

[53]    Obviously, therefore, any alleged failure by Byrd to preserve this issue did not prejudice Body. *Diaz-Boyzo v. United States*, 294 Fed.Appx. 558, 560 (11th Cir. Sept. 26, 2008) ("An attorney would [] not be ineffective for failing to preserve a nonmeritorious issue because such a failure would not change the result and thus could not prejudice the client."), *cert. denied*, 555 U.S. 1216, 129 S.Ct. 1535, 173 L.Ed.2d 664 (2009).

[54]    "The United States Sentencing Guidelines provide for (at least) a four-level enhancement if a defendant 'used or possessed any firearm or ammunition in connection with another felony offense." *Id.* at 2, quoting U.S.S.G. § 2K1.1(b)(6).

> is irrefutably presumed that the firearm is connected to the commission of
> the offense involving the drugs, the court is not convinced, and thus does
> not find from the evidence, that the phrase "close proximity," or even the
> word proximity, applies in this case.

*Id.* at *4 (internal citations omitted; emphasis supplied).[55] Although it might be enough simply to point out that since *Patterson* is not binding on this Court (nor is it factually similar), Byrd was not deficient in any manner for failing to rely on *Patterson*, the undersigned proceeds further in the analysis simply to point out that this Court properly applied the four-level enhancement in this case.

Byrd, of course, did file a written objection to the § 2K2.1(b)(6) enhancement and therein contended that his client did not use or possess the firearm "in connection" with another felony offense. (Doc. 54.) At sentencing, Byrd argued that if the enhancement was applied Body would be punished for conduct for which he was acquitted by the jury and, further, such application would constitute use of this section of the guidelines in a manner not intended. (Doc. 78, at 3.) "It says if he possessed or used a gun in relation to another felony, it's possession of the gun with that felony that's the added four points to that felony. It's not added four points for possession of the gun conviction." (*Id.*) Byrd's objections were overruled, the Court specifically finding that the cocaine possession charges were substantiated by a preponderance of the evidence, *see United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir.) ("Our Circuit's precedent uniformly states, '[r]elevant conduct of which a defendant was acquitted nonetheless

---

[55] It need be noted that the court's "close proximity" analysis was not, in fact, the main thrust of its decision. Instead, the main focus of the decision was upon § 2K2.1(b)(6)'s "another felony offense" requirement, *see id*. at *2-4, the court ultimately concluding: "Because the court is not convinced, **by the evidence**, that Patterson committed the elements of possession with intent to distribute marijuana, Patterson did not commit 'another felony offense,' and the four-level enhancement to her offense level is inapplicable." *Id*. at *4 (emphasis supplied).

may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence.'" (citations omitted)), *cert. denied,* 546 U.S. 940, 126 S.Ct. 432, 163 L.Ed.2d 329 (2005), and further finding that the possession of the firearm was "in connection with the possession of cocaine." (*Id.* at 4-5.)[56]

The undersigned need not go over the particulars of § 2K2.1(b)(6) again but does note that the commentary explains that this subsection applies "*in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively*." U.S.S.G. § 2K2.1(b)(6), Commentary, Application Notes 14(B)(ii) (emphasis in original). Body sold crack cocaine to a confidential informant on four occasions from August 30, 2010 through October 19, 2010,[57] had $1,821.00 in cash on his person at the time of his arrest (including four one hundred dollar "marked" bills used by the CI to consummate the last of the four crack cocaine buys), had a marijuana cigarette on his person when arrested, was arrested in a house in which a gun was found in a suitcase in the dining room and rock-like residue found in the microwave tested positive for cocaine, and told Officer Jones after he had been Mirandized that he had the gun for protection. Based upon the foregoing, the government proved by a preponderance of the evidence that Body possessed cocaine in connection with possession of the firearm

---

[56]   "The Government must establish the facts necessary to support a sentencing enhancement by a preponderance of the evidence." *United States v. Schissler,* 463 Fed.Appx. 830, 831 (11th Cir. Mar. 8, 2012).

[57]   The substances purchased by the confidential informant were forensically tested and revealed the presence of cocaine base.

and, thus, the enhancement was properly applied. *Compare Schissler, supra*, at 831 ("The district court did not clearly err when it concluded Schissler possessed a rifle and ammunition in relation to trafficking oxycodone. The district court appropriately relied on undisputed statements in the PSI, which reported that Schissler sold oxycodone to a confidential informant on two occasions, and that he had small amounts of different prescription drugs and over $2,000 in cash on his person at the time of his arrest. The PSI also included a 2006 Florida state court conviction of possessing oxycodone with the intent to distribute. Moreover, after searching Schissler's apartment, the police found five grams of oxycodone under his bed in a bottle labeled with a prescription for tamazepam, a coded ledger entitled 'Deals,' and a .22 caliber rifle with ammunition in a closet.[58] The Government proved by a preponderance of the evidence that Schissler trafficked oxycodone; thus, the enhancement applied and Schissler's sentence was procedurally reasonable." (internal citations omitted; footnote added)) *with United States v. Purifoy,* 264 Fed.Appx. 773, 774 & 775 (11th Cir. Feb. 1, 2008) ("[F]ollowing a traffic stop, Purifoy ran from police and hid in a trash dumpster. While pursuing Purifoy, police found a firearm on the ground. Once the police caught Purifoy and arrested him, they found two baggies of what they suspected to be marijuana in Purifoy's sock and over $1,300 in Purifoy's possession. . . . Here, the undisputed facts established that Purifoy possessed two baggies of marijuana in his shoe and more than $1,300 in cash at the time of his arrest. Purifoy also admitted that he possessed the firearm found in the

---

[58]     The Eleventh Circuit makes no mention whatsoever that the rifle was in "close proximity" to the drugs nor does it pinpoint in which closet the rifle was found. *See id*.

*proximity* of his arrest.[59] This evidence was sufficient for the court to conclude that the firearm was used in connection with drug dealing activities. Thus, the court properly applied the enhancement." (emphasis supplied; footnote added)). Because this Court correctly applied the four-level enhancement set forth in § 2K2.1(b)(6) of the sentencing guidelines, Byrd was not constitutionally deficient under *Strickland*.

       **G.**    **Alleged Ineffective Assistance of Appellate Counsel**.  Body's final claim is that his appellate attorney, Robert Ratliff, was constitutionally deficient because he failed to raise the following issues on appeal: (1) the four-level sentencing enhancement for possessing a firearm in connection with another felony offense; (2) the government's failure to correct perjured testimony; and (3) the Court's failure to conduct a *Garcia* hearing after it was informed of a conflict of interest between Byrd and petitioner. As explained above, none of petitioner's underlying claims have any merit.[60] Therefore, appellate counsel obviously was not constitutionally ineffective in failing to raise these non-meritorious claims on appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" (citation omitted)), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001); *see also Larens v. United States*, 394 Fed.Appx. 646, 647 (11th Cir. Aug. 27, 2010) ("'[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.'" (citation omitted)), *cert. denied,* ___ U.S. ___, 131 S.Ct. 2474, 179

---

[59]     The undersigned finds particularly significant the Eleventh Circuit's failure to use "close" to modify proximity and its omission of any indication of the distance between the gun and the dumpster in which Purifoy was located.

[60]     That is, the four-level enhancement was properly applied, the prosecution did not knowingly use perjured testimony, and there was no reason for the court to conduct a *Garcia* hearing because there was no actual conflict of interest between Body and his trial attorney.

L.Ed.2d 1231 (2011).

**H.    Evidentiary Hearing**.  There is no need for a hearing in this matter because Body has failed to proffer "**credible** and **specific evidence** entitling him to relief." *United States v. Salmoran-Calderon*, 2012 WL 6827478, \*20 (N.D. Fla. Nov. 27, 2012) (citations omitted; emphasis supplied), *report and recommendation adopted,* 2013 WL 132481 (N.D. Fla. Jan. 10, 2013). In other words, petitioner is not entitled to an evidentiary hearing in this case because his allegations are either frivolous, affirmatively contradicted by the record, or, otherwise, even taking the facts he states as true, same would not entitle him to relief. *Aron v. United States,* 291 F.3d 708, 714-715 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Although we have stated that a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, no such circumstances are present here." (internal citations omitted)); *see also United States v. Bejacmar*, 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."); *see Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (internal quotation marks omitted)), *cert. denied sub nom. Tejada v. Singletary*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *cf. Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir.) ("Because the 1999 affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district

65

court was not required to hold an evidentiary hearing on the issues and correctly denied

Lynn's § 2255 motion."), *cert. denied*, 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

**I.**     **Certificate of Appealability**.    In consideration of the foregoing, it is

recommended that the Court deny Body's motion to vacate, set aside or correct his

sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules

Governing § 2255 Proceedings, the undersigned recommends that a certificate of

appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court

must issue or deny a certificate of appealability when it enters a final order adverse to

the applicant."). The habeas corpus statute makes clear that an applicant is entitled to

appeal a district court's denial of his habeas corpus petition only where a circuit justice

or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).    A certificate of

appealability may issue only where "the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  Where, as here, a habeas petition

is being denied on the merits of an underlying constitutional claim, a COA should issue

only when the petitioner demonstrates "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id*. at 483-484, 120

S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a

substantial showing of the denial of a constitutional right, a demonstration that, under

*Barefoot*, includes showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that

the issues presented were '"adequate to deserve encouragement to proceed further."'");

*see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003)

66

("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to petitioner's ineffective-assistance-of-counsel claims raised herein, the undersigned recommends that the Court find that reasonable jurists could not debate whether Body's § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (*compare* Doc. 88

*with* Doc. 93) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of May, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

68